**Amy Cook COLLIER and Ryan Collier, Appellants,**

v.

**ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, Appellee.**

**No. 2–00–116–CV.**

Court of Appeals of Texas, Fort Worth.

June 7, 2001.

Law Office of Julie Kraatz, Julie Kraatz, Fort Worth, for Appellant.

Stacy & Conder, PLLC, Dennis D. Conder, Pamela J. Touchstone, Dallas, for Appellee.

PANEL B: LIVINGSTON, HOLMAN, and GARDNER, JJ.

## OPINION

GARDNER, Justice.

### I. INTRODUCTION

This is a declaratory judgment action. Appellee Allstate County Mutual Insurance Company sought a declaration that it owed no duty to defend or indemnify Appellants Amy Cook Collier ("Cook") [1] and Ryan Collier ("Collier") under a Texas Personal Automobile Policy for a suit brought against them by Amy Jeanine Dunn ("Dunn"). On appeal, appellants complain of a summary judgment granted in favor of Allstate.

### II. FACTUAL AND PROCEDURAL BACKGROUND

On December 29, 1996, Collier was driving an automobile owned by Cook. Cook, Mande Cook, and Fred Rowe were passengers in the automobile driven by Collier. Dunn was driving a vehicle in front of that driven by Collier. Dunn was involved in a collision with a third vehicle, the driver of which is not a party to this proceeding. Dunn sued Cook and Collier in the 141st District Court of Tarrant County, alleging "negligent" or "reckless" conduct of Cook and Collier proximately caused the collision with the third vehicle, resulting in injuries to Dunn.

Specifically, Dunn alleged Cook, Collier, and the other two passengers were following her in Cook's vehicle on Watauga Road in Tarrant County, Texas. While Dunn was stopped at a red light, Collier allegedly "got out of the vehicle ... he was driving and ran toward the Plaintiff's vehicle shouting to the Plaintiff.... Plaintiff

1. At the time of the accident, Amy Cook Collier and Ryan Collier were not married. They married while the underlying litigation was pending. For clarity, Amy Cook Collier is referred to as "Cook" and Ryan Collier is referred to as "Collier."

proceeded through the first intersection and then stopped for another traffic light." Dunn further alleged "Defendants continued to follow the Plaintiff." Dunn alleged she proceeded to a second red light and stopped again, and that Collier again "got out of the vehicle he was driving, approached the Plaintiff's vehicle, shouted at the Plaintiff and this time, kicked at the door while attempting to open the Plaintiff's car door." Dunn, allegedly in fear of bodily harm, attempted to escape and, in doing so, proceeded through the red light into the intersection where a vehicle crossing the intersection collided with her, resulting in physical injury to her and damage to her property.

According to Dunn, Cook and the passengers "encouraged, urged, aided and abetted Ryan Collier to pursue [Dunn's] vehicle and to act in a reckless, violent manner toward [Dunn]." Dunn specifically alleged that Collier was "negligent" for (1) creating fear in Dunn by continually following her in Cook's vehicle; (2) creating fear in Dunn by exiting Cook's vehicle and screaming at her on more than one occasion during his continued use of Cook's vehicle; (3) creating fear and a perceived need for escape by approaching Dunn's vehicle at a stop light, shouting, and attempting to open her door; and (4) failing to exercise an ordinary and reasonable degree of care in the operation of Cook's vehicle on that particular occasion.

Cook possessed a standard Texas Personal Automobile Policy issued by Allstate. Upon being sued, Cook and Collier requested that Allstate provide a defense and indemnify them for any judgment in the suit brought against them by Dunn. Allstate denied coverage and asserted that it had no duty to defend or indemnify Cook or her permissive driver, Collier, in Dunn's suit pending in the 141st District Court. Allstate filed an action in the 48th District Court seeking a declaratory judgment that it had no duty to defend or indemnify either Cook or Collier under the policy for the allegations made by Dunn. Cook and Collier counterclaimed for a declaration that Allstate had a duty to defend them in Dunn's suit.[2]

Allstate filed a motion for summary judgment asserting that it owed no duty to defend or indemnify Cook or Collier as a matter of law, and Cook and Collier filed cross-motions for summary judgment seeking respective declaratory judgments in their favor on the issue of Allstate's duty to defend and indemnify. The trial court granted Appellee's motion for summary judgment and denied Cook's and Collier's cross-motions, effectively declaring that Allstate had no duty to defend or indemnify Cook or Collier in Dunn's suit against them. Cook and Collier appeal from the summary judgment in favor of Allstate and from the denial of their cross-motions for summary judgment.

## III. DISCUSSION

### A. Standard of Review

■ We uphold a Rule 166a(c) summary judgment only if the summary judgment record establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law on a ground set forth in the motion. TEX.R. CIV. P. 166a(c); *e.g., Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). In deciding whether the summary judgment record establishes the absence of a genuine issue of material fact, we view as true all evidence favorable to the non-

---

**2.** Dunn's suit was subsequently transferred to the 48th District Court and consolidated with Allstate's declaratory judgment action.

movant and indulge every reasonable inference, and resolve all doubts, in its favor. *Id.*

When both sides move for summary judgment and the trial court grants one motion and denies the other, we review both sides' summary judgment evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000) (citing *Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex. 1988)). When reviewing cross-motions for summary judgment, we may render the judgment that the trial court should have rendered. *Id.* (citing *Agan,* 940 S.W.2d at 81; *Members Mut. Ins. Co. v. Hermann Hosp.,* 664 S.W.2d 325, 328 (Tex.1984)).

The parties agree there is no genuine issue of material fact, and the sole question presented is of law as to whether Allstate has a contractual duty under its policy to defend and indemnify Cook and Collier for the claims asserted against them by Dunn. *See, e.g., State Farm Gen. Ins. Co. v. White,* 955 S.W.2d 474, 475 (Tex.App.— Austin 1997, no writ). Therefore, we review the summary judgment de novo to determine whether Allstate established its right to prevail as a matter of law. *Wessinger v. Fire Ins. Exch.,* 949 S.W.2d 834, 836–37 (Tex.App.—Dallas 1997, no writ).

Allstate presented multiple grounds in its motion for summary judgment urging that it owed no obligation of defense or indemnity under Cook's auto policy. The judgment in favor of Allstate does not specify the grounds upon which it was granted. Therefore, if the summary judgment can be upheld on any ground presented in the motion, we must affirm. When a trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm the summary judgment if any of the summary judgment grounds are meritorious. *Star-Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

### B. The Parties' Contentions

Allstate's first ground for summary judgment was that neither Cook nor Collier qualify as "covered persons" within the meaning of the Allstate policy because their alleged liability does not arise out of the "use" of Cook's automobile. Second, Allstate contended that, even if Cook or Collier qualify as "covered persons" within the meaning of the policy, the policy would not apply because the damages claimed do not arise from an "auto accident" so as to trigger the insuring agreement of the policy. Finally, Allstate contended that, even if the allegations in the case state a claim arising from an "auto accident" so as to trigger the insuring agreement of the policy, the intentional injury exclusion of the policy precludes any potential coverage afforded either Cook or Collier.

Cook and Collier argue that summary judgment in favor of Allstate was error and that they are entitled to judgment as a matter of law. First, they assert that they are "covered persons" entitled to a defense under the Allstate policy because the pleadings allege that Dunn's injuries arise out of "use" of Cook's vehicle. Second, they argue that, according to the allegations, their liability to Dunn, if any, would be for an "auto accident" as required for coverage because the alleged injuries to Dunn (a) involved the insured Cook vehicle, and (b) resulted from negligence rather than voluntary or intentional conduct of Cook or Collier. Finally, even assuming that their alleged acts can be construed as intentional, they contend the exclusion for intentionally caused injuries does not apply.

### C. The Law Regarding Duty to Defend

It is well established that a liability insurer's duty to defend is determined by

the factual allegations of the pleadings, considered in light of the policy provisions and without reference to the truth or falsity of the allegations. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997); *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex.1965) (holding duty to defend is determined without reference to truth or falsity of allegations); *Reser v. State Farm Fire & Cas. Co.*, 981 S.W.2d 260, 263 (Tex.App.—San Antonio 1998, no pet.) (noting that duty to defend is unaffected by facts ascertained before suit, during trial, or by ultimate outcome of suit).

■ This test, generally known as the "complaint allegation rule," and also referred to as the "eight corners rule," limits review to the four corners of the insurance policy and the four corners of the plaintiff's petition in the underlying suit. *Nat'l Union*, 939 S.W.2d at 141; *see St. Paul Surplus Lines Ins. Co. v. Geo Pipe Co.*, 25 S.W.3d 900, 903 (Tex.App.—Houston [1st Dist.] 2000, no pet.).[3]

■ When determining an insurer's duty to defend, we apply a liberal interpretation to the allegations of the petition in favor of the insured. *Nat'l Union*, 939 S.W.2d at 141. Any doubt as to whether allegations in a petition state a covered cause of action must be resolved in favor of the insured. *Id.* The insurer owes a duty to defend if the pleadings "potentially"

state a claim within coverage. *Id.* (citing *Heyden*, 387 S.W.2d at 26). Nevertheless, it is not every doubt that requires resolution of the duty to defend in favor of the insured; the pleadings must create "that degree of doubt which compels resolution of the issue for the insured." *Id.* at 142.

■ In reviewing the pleadings in light of the policy provisions, we must focus on the facts alleged, not on legal theories. *Id.*; *King v. Dallas Fire Ins. Co.*, 27 S.W.3d 117, 120 (Tex.App.—Houston [1st Dist.] 2000, pet. granted); *Geo Pipe Co.*, 25 S.W.3d at 903; *State Farm Gen. Ins. Co. v. White*, 955 S.W.2d 474, 475 (Tex.App.—Austin 1997, no pet.). "It is not the cause of action alleged that determines coverage, but the facts giving rise to the alleged actionable conduct." *Nat'l Union*, 939 S.W.2d at 141(quoting *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex.App.—Houston [14th Dist.] 1993, writ denied)). If the petition does not allege facts within the scope of the policy's coverage, an insurer is not legally required to provide a defense. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex.1997); *Nat'l Union*, 939 S.W.2d at 141; *Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982).

**D. Application of Law to Allstate's Duty to Defend—No "Auto Accident"**

■ Looking solely within the "eight corners" of Dunn's petition and Cook's pol-

---

3. Allstate does not contend that an exception to the eight-corners rule applies to allow consideration of extrinsic evidence regarding its duty to defend Cook or Collier. Therefore, we are not faced with an issue of whether any such exception is applicable here. *Compare Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.*, 16 S.W.3d 418, 421 (Tex.App.—Waco 2000, pet. denied) (holding exception to eight-corners rule applies when petition in underlying suit does not allege facts sufficient to

determine whether duty to defend is invoked), and *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452 (Tex.App.—Corpus Christi 1992, writ denied) (holding evidence adduced at declaratory judgment hearing may be considered along with pleadings to fill "gaps" in allegations); *with Tri-Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.*, 981 S.W.2d 861, 863 (Tex.App.—Houston [1st Dist.] 1998, pet. denied) (apparently declining to follow *State Farm Fire & Cas. Co v. Wade*).

icy, we first consider whether Dunn's alleged injuries arose out of an "auto accident." The insuring agreement contained in Cook's policy states that "[Allstate] will pay damages for bodily injury or property damage for which any covered person becomes legally responsible *because of an auto accident.*" (Emphasis added). Even assuming that Cook and Collier qualified as "covered persons" under Cook's policy, their alleged liability fails to trigger coverage requiring a defense by Allstate because neither Cook's nor Collier's alleged liability in this case arose from an "auto accident" resulting from their use of the covered vehicle.

"Auto accident" is not defined in Cook's policy. However, the Texas Supreme Court has held that, where an insured's acts "are voluntary and intentional and the injury is the natural result of the act," the result was not caused by "accident" within the meaning of the policy even though the particular injury may have been unexpected, unforeseen, and unintended. *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973). Under that definition, we first determine whether specific acts alleged to have caused the plaintiff's injuries in the underlying suit were "voluntary and intentional." If so, then we next determine whether the injuries alleged were a "natural result" of the acts. *See Wessinger,* 949 S.W.2d at 838 (describing analysis of whether injuries were caused by "accident" under *Maupin* as "two-step" process); *see also Folsom Invs., Inc. v. Am. Motorists Ins. Co.,* 26 S.W.3d 556, 559 (Tex.App.—Dallas 2000, no pet.).

In *Trinity Universal Ins. Co. v. Cowan,* the supreme court reaffirmed *Maupin* with refinement of the definition of "accident." 945 S.W.2d at 827–28. The court in *Cowan* explained that the "natural result" of an act is an injury of a type that could be "reasonably anticipated from the use of the means," or an effect that the insured could be "charged with … producing." *Cowan,* 945 S.W.2d at 828 (quoting *Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 555–56 (Tex.1976)). In other words:

> When a result is not the natural and probable consequence of an act or course of action, it is produced by accidental means. The natural result of an act is the result that ordinarily follows, may be reasonably anticipated, and ought to be expected. This standard is objective. *A person is held to intend the natural and probable results of his acts even if he did not subjectively intend or anticipate those consequences.*

*Wessinger,* 949 S.W.2d at 837–38 (citing *Heyward,* 536 S.W.2d at 556 (citations omitted) (emphasis added)); *see also Hartrick v. Great American Lloyds,* 62 S.W.3d 270 (Tex.App.—Houston [1st Dist.] 2001, no pet.)(op. on reh'g.) (finding no "accident" under same definition); *Stumph v. Dallas Fire Ins. Co.,* 34 S.W.3d 722, 730 (Tex.App.—Austin 2000, no pet.) (applying two-step analysis considering both intent of actor and reasonably foreseeable result).

In similar circumstances to those alleged by Dunn, courts have found no "accident" alleged. In *Misle v. State Farm Mut. Auto. Ins. Co.,* a passenger concealed in the back seat of an auto directed the driver to go to Sixth Street so that they might have some fun shooting at people, and injured the plaintiff with shots from a BB gun. 908 S.W.2d 289, 292 (Tex.App.—Austin 1995, no writ). Despite allegations of negligence and that the insured only intended to get a "reaction" from the crowd, the Austin court held that the underlying suit failed to allege an "accident" triggering the insurer's duty to defend. *Id.; see*

*also S. Farm Bureau Cas. Ins. Co. v. Brock,* 659 S.W.2d 165, 166–67 (Tex.App.— Amarillo 1983, writ ref'd n.r.e.) (holding damages suffered as result of insured's deliberately ramming another vehicle to prevent shooting of another individual not "accidental"); *State Farm Mut. Auto. Ins. Co. v. Hawkins,* 962 F.Supp. 984, 985 (E.D.Tex.1996) (holding liability did not arise from "automobile accident" where insured in van intentionally shot driver of pickup truck causing truck to go out of control and strike bridge).

Other courts of appeals, including our own, have reached the same conclusion under a similar analysis of the term "accident." In *State Farm Lloyds v. Kessler,* we held that an insurer had no duty to defend under a homeowner's policy where all allegations of injury and damage in the underlying lawsuit revolved around alleged intentional misrepresentations by the insured, such that any damages suffered by purchasers were not caused by "accident" as required by the policy. 932 S.W.2d 732, 738 (Tex.App.—Fort Worth 1996, writ denied); *see also King,* 27 S.W.3d at 121 (holding allegations that employee "negligently" attacked plaintiff and kicked him in face clearly set forth intentional conduct not constituting a covered "occurrence" because not resulting from "accident"); *Wessinger,* 949 S.W.2d at 837 (holding "accident" not alleged by allegations that insured "negligently" punched plaintiff repeatedly in face in drunken fit).

Applying the reasoning of those cases to the facts alleged, there was clearly no "accident." Dunn's pleadings allege, at best, that both Cook and Collier's actions were voluntary and intentional. Dunn specifically alleges that Cook "actively" encouraged, urged, aided, and abetted Collier in his acts of following Dunn's car, exiting Cook's car, shouting at Dunn, and kicking and attempting to open Dunn's car door.

These acts as alleged in Dunn's petition do not suggest anything other than volitional and intentional behavior and that Dunn's subsequent collision and injuries naturally resulted from that behavior.

Moreover, the term "auto accident" refers to situations where one or more vehicles are involved in some type of collision or near collision with another vehicle, object, or person. *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 83 (Tex.1997). In *Griffin,* the supreme court held that the insurer had no duty to defend under a standard auto policy where the underlying suit alleged a "random act of violence" in that "several rounds" of gunfire were discharged from the vehicle driven by the insured. The court held that, to read Griffin's petition as alleging an auto accident would "strain that term beyond any reasonable meaning." *Id.* at 82–83. The insured automobile must, in some manner, be involved in the accident.

In *State Farm Mutual Insurance Company v. Peck,* the Amarillo Court of Appeals held that the liability coverage section of an automobile policy providing that the insurer would pay for damages arising out of an "auto accident" did not cover damages incurred by a passenger bitten by the insured's dog while sitting in the insured's vehicle, because the only nexus between the dog-biting incident and the vehicle was the fact that the passenger was sitting in the vehicle when he got bit. 900 S.W.2d 910, 913 (Tex.App.—Amarillo 1995, no writ). The insured's vehicle must have been involved in the accident "in some manner." *Id.*

Here, giving a liberal interpretation to Dunn's factual pleadings, there was no "auto accident" because (1) there was no "accident" and (2) the Cook "automobile" was not involved in any manner in the collision that resulted in Dunn's alleged

injuries. We hold that Allstate had no duty to defend either Cook or Collier as a matter of law because their liability was not based on an "auto accident." Because of our decision on this ground, it is unnecessary to reach the issues of whether Cook and Collier were "covered persons" under the policy or whether the judgment in favor of Allstate may be upheld based on the "intentional injury" exclusion.

### E. Application of Law to Duty to Indemnify

█ Cook and Collier argue that, regardless of whether Allstate owed a duty to defend, the trial court erred in determining that Allstate owed no duty to indemnify them for any judgment prior to any decision on the merits of the suit against them. They are correct that the duty to defend and the duty to indemnify are distinct and separate duties. *Cowan*, 945 S.W.2d at 821–22; *Reser*, 981 S.W.2d at 263. In contrast to the duty to defend, the duty to indemnify only arises after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages in a lawsuit. *Griffin*, 955 S.W.2d at 82–83; *Reser*, 981 S.W.2d at 263.

█ An insurer may have a duty to defend but, ultimately, no duty to indemnify. *Griffin*, 955 S.W.2d at 83. However, the supreme court has held that the duty to indemnify is justiciable before trial of the underlying suit where the same reasons that negate the duty to defend may likewise negate any possibility that the insurer will have a duty to indemnify for any judgment. *Griffin*, 955 S.W.2d at 83. If the facts alleged in the underlying suit are insufficient to invoke the duty to defend, then proof of all of those same facts will not invoke the insurer's duty to indemnify. *Id.*

Cook and Collier offer no reason why Allstate's contractual obligation to indem-

nify them for any judgment is not subject to the holding in *Griffin*, that the insurer there had no duty to defend because no facts could be developed that could transform the drive-by shooting into an "auto accident," and, for the same reason, the insurer had no duty to indemnify. *Id.* For the reasons stated as to why there is no duty to defend, we hold that Allstate has no duty to indemnify Cook or Collier for any judgment obtained against them in the underlying suit by Dunn.

### IV. CONCLUSION

In summary, we hold that, under the facts pleaded in Dunn's underlying petition in light of the policy provisions in Cook's standard auto policy, Allstate had no duty to defend or indemnify either Cook or Collier as a matter of law, because their liability was not based on an "auto accident." We overrule Cook and Collier's issue and affirm the trial court's summary judgment in favor of Allstate.