**GREAT AMERICAN LLOYDS INSURANCE COMPANY,**
Appellant,

v.

**Mark MITTLESTADT and Kimberly Mittlestadt, Appellees.**

No. 2–01–389–CV.

Court of Appeals of Texas,
Fort Worth.

June 5, 2003.

Thompson, Coe, Cousins, et al., Wade C. Crosnoe, Aaron L. Mitchell, Dallas, for Appellant.

Turner & Lybrand, P.C., Robert D. Lybrand, Coppell, for Appellees.

Panel A: CAYCE, C.J., DAY and LIVINGSTON, JJ.

## OPINION

SAM J. DAY, Justice.

### I. INTRODUCTION

Appellees Mark and Kimberly Mittlestadt sued appellant Great American Lloyds Insurance Company to recover on a judgment rendered against Moneyline Construction, an insured of Great American. On September 19, 2001, the trial court heard evidence and rendered a judgment in favor of the Mittlestadts in the amount of $110,664, plus attorney's fees and costs. Great American appeals from that judgment. We reverse and render.

### II. FACTUAL BACKGROUND

On April 2, 1996, the Mittlestadts entered into a written agreement to purchase real property and a house from Moneyline. At the closing, they learned that the house encroached on a pipeline easement owned by Citgo. According to the Mittlestadts, Moneyline then induced them to close on the contract by representing to them that Citgo had agreed to permit the house to remain permanently on the easement. The Mittlestadts closed on the sale in reliance on that representation. After the sale, however, they discovered that Citgo would only allow the house to remain on the easement on a conditional and limited basis.

The Mittlestadts brought suit against Moneyline (hereinafter "the underlying suit"), alleging it was negligent in constructing the house on the pipeline easement, constructing the house in reliance on a plot plan that did not reflect the easement, and representing that Citgo would allow the house to remain on the easement. In addition to negligence, the Mittlestadts brought causes of action for fraud, violations of the Texas Deceptive Trade Practices Act, and breach of contract. They also brought similar claims against Professional Home Design and Mark Phillips, who prepared the plot plan used by Moneyline in building the house.

After suit was filed, Moneyline contacted Great American for coverage under its liability insurance policy. Great American initially defended Moneyline in the lawsuit, but later withdrew its defense based on its conclusion that the Mittlestadts were not alleging any damages potentially covered under the insurance policy. According to Great American, the Mittlestadts had not alleged any "property damage" caused by an "occurrence" as required by the insurance policy.

The Mittlestadts' lawsuit against Moneyline and the other defendants proceeded to a bench trial on February 22, 2000. Only the Mittlestadts presented evidence in the case, and Professional Home Design and Mark Phillips did not appear. Following the Mittlestadts' presentation of evidence, Moneyline moved for directed verdict on their fraud, DTPA, and breach of contract claims. The trial court granted the motion, leaving the Mittlestadts with only their negligence causes of action as potential bases for recovery. Following argument, the trial court rendered judgment for the Mittlestadts, and against Moneyline and the other defendants, in the amount of $80,000 for actual damages and $30,664 for prejudgment and postjudgment interest. No findings of fact and conclusions of law were entered in the underlying suit.

After obtaining the judgment against Moneyline, the Mittlestadts filed suit against Great American to recover on the judgment (the "indemnity suit"), alleging that the judgment was covered under Moneyline's policy with Great American and that Great American had wrongfully declined to pay the judgment. Following a bench trial, the trial court rendered judgment in favor of the Mittlestadts. This appeal followed.

### III. THE DUTY TO INDEMNIFY

■ As Great American contends, the main issue presented in this appeal is whether Great American has a duty to indemnify Moneyline for the Mittlestadts' damages. In support of its contention that no duty to indemnify exists, Great American argues that the trial court's finding of "property damage" is erroneous and that the trial court erred in making this fact finding because whether "property damage" exists is an issue of law to be reviewed de novo. We agree that the issue of whether Great American has a duty to indemnify is a legal issue to be reviewed de novo, *see Collier v. Allstate County Mut. Ins. Co.*, 64 S.W.3d 54, 58 (Tex.App.-Fort Worth 2001, no pet.), and that the determination of whether "property damage" occurred is also an issue of law. *See Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 274 (Tex.App.-Houston [1st Dist.] 2001, no pet.) ("[W]hen a policy permits only one interpretation, we construe [a contract] as a matter of law and enforce it as written."); *GT & MC, Inc. v. Tex. City Refining, Inc.*, 822 S.W.2d 252, 255–56 (Tex.App.-Houston [1st Dist.] 1991, writ denied) ("If the written instrument is worded so that it can be given a certain definite meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law.").

■ Unlike the duty to defend, which arises when a petition seeking damages alleges facts that potentially support claims covered by a liability policy, the duty to indemnify arises from proven, adjudicated facts. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex.1997) ("The duty to indemnify is triggered by the actual facts establishing liability in the underlying suit."); *Hartrick*, 62 S.W.3d at 275 (same); *see also Ins. Co. of N. Am. v. McCarthy Bros. Co.*, 123 F.Supp.2d 373, 377 (S.D.Tex.2000) (stating that in Texas, *the underlying liability facts*, rather than the legal theory of liability, trigger the duty to indemnify). No duty to indemnify arises *unless the underlying litigation establishes liability for damages* covered by the insuring agreement of the policy. *See Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *disapproved on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex.1996); *Hartrick*, 62 S.W.3d at 275; *see also Malone v. Scottsdale Ins. Co.*, 147 F.Supp.2d 623, 629

(S.D.Tex.2001). Consequently, because a duty to indemnify arises only if the underlying litigation establishes liability, we only look to the facts established in the underlying litigation to determine if a duty to indemnify exists.[1]

Under the general liability policy, Great American's duty to indemnify arises if "property damage" is caused by an "occurrence." An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Great American's policy defines "property damage" as:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

In light of this policy, the trial court in the indemnity suit found that the Mittlestadts suffered "property damage" in the form of a "loss of use of a portion of the residence" and "an injury to tangible property." Based on these findings, the trial court concluded that Great American had a duty to indemnify.

In reviewing the evidence established in the underlying suit, we conclude that it does not show that the property at issue suffered a physical injury.[2] The evidence in the underlying suit only showed that the Mittlestadts relied on Moneyline's representation in closing on the house; the house was not physically damaged. As a result, we are left to decide whether "property damage" resulted from a "loss of use of tangible property."

■■■ Again, in deciding whether a "loss of use" occurred, we limit our review to the underlying litigation to determine whether the evidence in that case established liability for damages covered by the insuring agreement. *Cowan*, 945 S.W.2d at 821; *Hartrick*, 62 S.W.3d at 275. The evidence established in the underlying suit does not support a conclusion that a duty to indemnify exists based on the "loss of use" of the property.[3] While the Mittles-

---

1. Although Great American contends in its first issue that the trial court should not have considered facts and evidence that differed from the underlying suit, we do not need to address that issue given that we only consider the facts establishing liability in the underlying suit to determine whether the trial court erred in concluding that Great American owed a duty to indemnify. In doing so, we review the record from the underlying suit, which includes the pleadings, the trial transcript, the insurance policy, and the judgment, all of which were before the trial court in the indemnity suit.

2. The evidence in the indemnity suit also did not establish that there was a physical injury to the property. To the contrary, Mark Mittlestadt admitted that the encroachment of the house on the easement did not physically harm the house and that Citgo has not disturbed the property.

3. The evidence in the indemnity suit also does not support the conclusion that a loss of use occurred. Mark Mittlestadt testified in the indemnity suit that Citgo has never prevented him and his wife from using any portion of the house, and the Mittlestadts' expert also testified that the house is *"obviously habitable.* The problem ... in terms of *value and marketability* is it is virtually *unsalable."* [Emphases added.] While the Mittlestadts' expert responded affirmatively to the Mittlestadts' attorney's question regarding whether his appraisal of the value of the house would be $134,000 "if the homeowner had the *permanent use* of the portion of the structure in the easement," the evidence did not establish that a loss of use had in fact occurred. [Emphasis added.] Moreover, the same expert in the underlying suit based his calculation of damages on the difference between the value of the home with the easement and the value of the home without the easement. And at

tadts introduced evidence in the underlying suit supporting recovery for loss of value to the property, Texas courts have repeatedly held that economic losses do not constitute "property damage" within the meaning of a general liability policy. *See State Farm Lloyds v. Kessler,* 932 S.W.2d 732, 737 (Tex.App.-Fort Worth 1996, writ denied); *Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.,* 829 S.W.2d 270, 272–73 (Tex.App.-Dallas 1992, writ denied); *Houston Petroleum Co. v. Highlands Ins. Co.,* 830 S.W.2d 153, 156 (Tex. App.-Houston [1st Dist.] 1990, writ denied); *Lay v. Aetna Ins. Co.,* 599 S.W.2d 684, 686–87 (Tex.Civ.App.-Austin 1980, writ ref'd n.r.e.). Consequently, we hold that as a matter of law no loss of use occurred and, thus, no property damage occurred and that the trial court erred in determining that Great American had a duty to indemnify Moneyline. We sustain issue three with regard to the challenge to the trial court's finding of "property damage." [4]

In its fifth issue, Great American contends the trial court erred in conditionally awarding $3,000 in attorney's fees to the Mittlestadts upon the denial or successful defense of Great American's petition for review to the Supreme Court of Texas. In light of our ruling on issue three, we believe that this issue is now moot. Thus, we overrule it.

## IV. CONCLUSION

Having concluded that Great American has no duty to indemnify Moneyline, we reverse the trial court's judgment. Because there is only one result that should

closing in the underlying suit, the Mittlestadts asked the trial court to award damages based on "the difference between the value of the house as it would be had it been located out of the easement and the value of the house located within the easement." The damages

have been rendered in this case, we render judgment that the Mittlestadts take nothing in their action against Great American.

requested in the underlying suit amounted to the same requested in the indemnity suit.

4. In light of our decision on issue three, we need not address Great American's first, second, and fourth issues or the remainder of issue three. *See* TEX.R.APP. P. 47.1.