COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-383-CV

 

 

KB HOME F/K/A KAUFMAN AND
                                         APPELLANTS

BROAD HOME CORPORATION, 

KAUFMAN AND BROAD LONE 

STAR, L.P., KB HOME LONE 

STAR, L.P., KAUFMAN AND
BROAD 

OF TEXAS, LTD., AND TOM
BANNON

                                                                                                        

                                                   V.

 

EMPLOYERS MUTUAL                                                     APPELLEE

CASUALTY
COMPANY                                                                         

                                              ------------

 

           FROM THE 141ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction








In three issues, Appellants KB Home f/k/a Kaufman
and Broad Home Corporation, Kaufman and Broad Lone Star, L.P., KB Home Lone
Star, L.P., Kaufman and Broad of Texas, Ltd., and Tom Bannon (collectively, AKB@) assert
that the trial court erred by granting Appellee Employers Mutual Casualty
Company=s (AEMC@) motion
for summary judgment and denying KB=s motion
for partial summary judgment.  We affirm.

II. 
Background

A.  Facts

In 2001, over 230 homeowners from the Arlington
neighborhood of Southridge Hills filed or intervened in two lawsuits against
KB.  In the underlying litigation, the
various homeowners alleged that the homes they purchased were developed on
property previously utilized by the United States government for munitions
testing.  As a result of the testing, an
unknown number of unexploded bombs existed within the property.  The homeowners asserted that KB developed the
property for residential use despite its knowledge of the property=s prior
use and the presence of the unexploded bombs. 
The homeowners further alleged that KB failed to disclose the
information and misrepresented the property=s prior
use.  The suit eventually landed in
arbitration before the American Arbitration Association.  

 

 

 








B.  The
Insurance Policy

Kaufman and Broad Lone Star, L.P. was the named
insured under an EMC policy effective from March 26, 1999, to March 26,
2000.  It reads in part the following:

Throughout this policy
the words Ayou@ and Ayour@ refer to the Named
Insured shown in the Declarations, and any other person or organization
qualifying as a Named Insured under this policy. . . . 

The word Ainsured@ means any person or
organization qualifying as such under WHO IS AN INSURED (SECTION II).

 

. . . .

 

SECTION I - COVERAGES

 

COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

 

1.  Insuring Agreement

 

a.  We will pay those sums that the insured
becomes legally obligated to pay as damages because of Abodily injury@ or Aproperty damage@ to which this insurance
applies.  We will have the right and duty
to defend the insured against any Asuit@ seeking those damages.  However, we will have no duty to defend the
insured against any Asuit@ seeking damages for Abodily injury@ or Aproperty damage@ to which this insurance
does not apply. . . .

 

. . .
. 

 

b.  This insurance applies to Abodily injury@ and Aproperty damage@ only if:

 

(1) The Abodily injury@ or Aproperty damage@ is caused by an Aoccurrence@ that takes place in the Acoverage territory@; and

 








(2) The Abodily injury@ or Aproperty damage@ occurs during the policy
period.

 

. . . .

SECTION V - DEFINITIONS

 

. . . .

 

12. AOccurrence@ means an accident,
including continuous or repeated exposure to substantially the same general
harmful conditions.

 

. . . .

 

15. AProperty damage@ means:

 

a. Physical injury to
tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur
at the time of the physical injury that caused it, or

 

b. Loss of use of tangible property that is not
physically injured.  All such loss of use
shall be deemed to occur at the time of the Aoccurrence@ that
caused it.

C. 
Insurance Litigation

In February 2005 and October 2005, KB notified
EMC of the homeowners= claims and demanded that EMC
defend KB in the suits by the homeowners. 
EMC declined to defend KB. 








Litigation between EMC and KB ensued, and in its
first amended original petition, EMC pleaded that AEMC does
not believe that it is under any duty to defend or indemnify Defendants in
connection with the underlying lawsuit and prays for a declaration that it owes
no such duties as a matter of law.@  KB filed their counterclaims against EMC and
sought a declaration compelling EMC=s
compliance with its contract, i.e., defense against the homeowners=
lawsuits, for damages resulting from EMC=s bad
faith, and for damages resulting from EMC=s
alleged violations of articles 21.21 and 21.55 of the Texas Insurance Code; KB
moved for partial summary judgment on its requested declaration of EMC=s duty
to defend against the homeowners=
lawsuits and on its alleged violations of article 21.55 of the insurance code
resulting from alleged wrongful refusal or failure to pay the claim.

EMC followed with its own motion for summary
judgment, seeking a declaration that it did not owe a duty of defense or
indemnity to its insured or other claimants and also requested summary judgment
in its favor on all other counterclaims.

The trial court initially granted KB=s
partial motion for summary judgment and denied EMC=s
motion.  EMC requested clarification of
the trial court=s order and also filed a motion
for reconsideration and for new trial. 
On June 29, 2006, the trial court withdrew its initial order, and it
issued a new order granting EMC=s motion
for summary judgment on September 20, 2006.








Because of concerns about the finality of the
trial court=s order, we ordered an appeal to
this court abated pending clarification of the trial court=s
intentions with regard to the disposition of KB=s
counterclaims.  On January 22, 2007, the
trial court signed a final order granting summary judgment to EMC and denied KB=s motion
for partial summary judgment.  This
appeal followed.

III. 
Standard of ReviewCSummary
Judgment

A defendant who conclusively negates at least one
essential element of a cause of action is entitled to summary judgment on that
claim.  IHS Cedars Treatment Ctr. of
Desoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004); see
Tex. R. Civ. P. 166a(b),
(c).  When reviewing a summary judgment,
we take as true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s
favor.  IHS Cedars Treatment Ctr.,
143 S.W.3d at 798. 

When both parties move for summary judgment and
the trial court grants one motion and denies the other, the reviewing court
should review both parties= summary
judgment evidence and determine all questions presented.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  The
reviewing court should render the judgment that the trial court should have
rendered.  Id.

 

 

 








IV.  Who is
an AInsured@?

In its third issue, KB asserts that the trial court
erred by denying its motion for partial summary judgment regarding its
assertion that each of the named parties in this appeal was an Ainsured@ under
the EMC policy.

The named insured on the Declaration Page of the
policy is AKaufman & Broad Lone Star,
L.P. dba Kaufman & Broad of Dallas.@[2]  Section II of the EMC policy contains the
provisions pertinent to our discussion and reads in part as follows:

SECTION II - WHO IS AN
INSURED

 

1. If you are designated in
the Declarations as:

 

a.  An individual . . . 

 

b.  A partnership or joint venture . . . 

 

c.  A limited liability company . . .

 

d. An organization other
than a partnership, joint venture or limited liability company you are an
insured.  Your Aexecutive officers@ and directors are
insureds, but only with respect to their duties as your officers or
directors.  Your stockholders are also
insureds but only with respect to their liability as stockholders. 

 

2. Each of the following
is also an insured:

 








a. Your Aemployees,@ other than either your Aexecutive officers@ (if you are an
organization other than a partnership, joint venture or limited liability
company) . . . but only for acts within the scope of their employment by you or
while performing duties related to the conduct of your business . . . 

 

. . . .

 

No person or organization
is an insured with respect to the conduct of any current or past partnership,
joint venture or limited liability company that is not shown as a Named Insured
in the Declarations. [Emphasis supplied.]

 








The KB entities have asserted that all of them
were being sued in the underlying lawsuit by the homeowners for the actions of
the named insured (a) in that the underlying plaintiffs= allegations
did not differentiate purported misconduct amongst the various defendants and
(b) through the underlying plaintiffs=
allegations of alter ego, single business enterprise, and respondeat superior.[3]  Therefore, they argue that the EMC policy
should cover all of the KB entities, not just the named insured.  They assert that this is a correct policy
interpretation because (a) the policy does not prohibit insured status for
unnamed persons or organizations for the conduct of a named insured and (b)
because this concept is indirectly supported by caselaw.  








We recognize that application of the
much-discussed Aeight corners@ rule
requires that we give the allegations in the pleadings a liberal interpretation
in favor of the insured.  See Nat=l Union
Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc., 939
S.W.2d 139, 141 (Tex. 1997).  However, a
plain reading of the previously recounted policy provisions does not include
non-named entities, such as the other defendants in this matter, as
insureds.  It does include executive
officers, employees, and stockholders under certain circumstances, but it
specifically excludes persons and organizations that were past partnerships,
joint ventures, or limited liability companies not shown to be named
insureds.  The fact that one non-insured
entity is purportedly sued for the actions of another insured entity does not
magically metamorphose a non-insured into an insured.  This is a logic-challenged idea.













Alter ego and single business enterprise are
separate and distinct theories.  George
Grubbs Enters., Inc. v. Bien, 881 S.W.2d 843, 859 (Tex. App.CFort
Worth 1994), rev=d on
other grounds, 900 S.W.2d 337 (Tex. 1995).  Under the single business enterprise
doctrine, when corporations integrate their resources to achieve a common
business purpose, each corporation may be held liable for the debts incurred in
pursuit of that business purpose.  Old
Republic Ins. Co. v. EX-IM Servs. Corp., 920 S.W.2d 393, 395-96 (Tex. App.CHouston
[1st Dist.] 1996, no writ).  This
doctrine is an equitable one applied to reflect partnership-type liability
principles.  N. Am. Van Lines, Inc. v.
Emmons, 50 S.W.3d 103, 110 (Tex. App.CBeaumont
2001, pet. denied).  Its purpose is to
prevent an entity from relying on corporate form to evade an existing
debt.  See Old Republic Ins. Co., 921
S.W.2d at 395.  Likewise, under the alter
ego theory, courts will disregard the corporate entity when there is such a
unity between a corporation and an individual that the corporation ceases to be
separate and when holding only the corporation liable would promote injustice
(the injustice being avoided is leaving the plaintiff with an uncollectible
judgment against the corporation while the alter ego goes free).  Mancorp, Inc. v. Culpepper, 836 S.W.2d
844, 845 (Tex. App.CHouston [1st Dist.] 1992, no
writ).  This doctrine has nothing to do
with insurance coverage and has everything to do with businesses joining
together to achieve a purpose and then seeking to avoid debts or judgments
incurred in that purpose.  An insurance
company assesses risks and issues a policy to a named insured and not to
unnamed uninsureds over whom it has no control, including those who may join in
an enterprise with the named insured or who may become indistinguishable from
the named insured.  No cases hold to the
contrary, and we decline to follow two cases which KB asserts yield a contrary
result indirectly by implication.  In
U.S. Fire Insurance Co. v. Deering Management Group, Inc., the xourt held
that a parent company=s insurance policy did not cover
an unnamed limited partnership owned by the parent=s
subsidiary company because they were separate legal entities and there was no
legal theory for taking exception to that rule.  946 F. Supp. 1271, 1278 (N.D. Tex.
1996).  In CU Lloyd=s of
Texas v. Hatfield, 126 S.W.3d 679 (Tex. App.CHouston
[14th Dist.] 2004, pet. denied), the court held that an unnamed sole proprietor
was an insured under the sole proprietorship business=s policy
which named the business as the insured. 
To the extent these cases may be construed by indirect implication to be
relevant to the issues before this court, we decline to adopt a reasoning that
would afford coverage to a non-named insured who is alleged to have acted in
concert with, or as, a named insured.  We
hold that the insureds under the policy are Kaufman and Broad Loan Star, L.P.
dba Kaufman & Broad of Dallas, also known as KB Home Lone Star, L.P.  KB=s third
issue is overruled to the extent that other parties are asserted to be insureds
under the EMC policy.

IV.  Duty
to Defend

In its first issue, KB argues that the trial
court erred by granting EMC=s motion
for summary judgment and by denying its motion for partial summary judgment,
finding that EMC had no duty to defend under its policy.  

We recently articulated the parameters of an
examination of the duty to defend in Grimes Construction, Inc. v. Great
American Lloyds Insurance Co., 188 S.W.3d 805 (Tex. App.CFort
Worth 2006, pet. filed).  We stated the
following:








The duty to defend is
determined by the allegations in the underlying pleadings and the language of
the insurance policy.  Nat'l Union
Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex.
1997).[[4]]  This standard is referred to as the Aeight corners@ rule.  Id. 
When we apply the Aeight corners@ rule, we give the
allegations in the pleadings a liberal interpretation in favor of the
insured.  Id.  In other words, Ain a case of doubt as to
whether or not the allegations of a complaint against the insured state a cause
of action within the coverage of a liability policy sufficient to compel the
insurer to defend the action, such doubt will be resolved in the insured=s favor.@  Id. 
(quoting Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387
S.W.2d 22, 26 (Tex. 1965)).  The facts
alleged in the pleadings against the insured are presumed to be true when
gauging the insurer=s duty to defend.  Heyden Newport Chem. Corp., 387 S.W.2d
at 24.  However, the court may not read
facts into the pleadings, look outside the pleadings, or Aimagine factual scenarios
which might trigger coverage.@  Merchants
Fast Motor Lines, 939 S.W.2d at 142. A liability policy obligates the
insurer to defend the insured against any claim that could potentially be covered,
regardless of the claim=s merits.  Heyden Newport Chem. Corp., 387 S.W.2d
at 26. A duty to defend any of the claims against an insured requires the
insurer to defend the entire suit.  CU
Lloyd=s of Tex. v. Main Street
Homes, Inc.,
79 S.W.3d 687, 692 (Tex. App.CAustin 2002, no pet.); Stumph v. Dallas Fire
Ins. Co., 34 S.W.3d 722, 728 (Tex. App.CAustin 2000, no pet.); Pro‑Tech
Coatings, Inc. v. Union Standard Ins. Co., 897 S.W.2d 885, 892 (Tex. App.CDallas 1995, no writ).

 

Grimes Constr., Inc., 188 S.W.3d at 809-10.  Further,








An insurer=s duty to defend its
insured is separate and distinct from its duty to indemnify.  Calli Homes, 236 F. Supp. 2d at
697.  The duty to indemnify is not based
on the pleadings in the underlying lawsuit, but on the facts that establish
liability.  Id. at 698;  Mittlestadt, 109 S.W.3d at 786‑87.  It arises only after the insured has been
adjudicated legally responsible for damages in a lawsuit by judgment or
settlement.  Collier v. Allstate
County Mut. Ins. Co., 64 S.W.3d 54, 62 (Tex. App.CFort Worth 2001, no
pet.).  The duty to defend is thus
broader than the duty to indemnify; if an insurer has no duty to defend, it has
no duty to indemnify.  Calli Homes,
236 F. Supp. 2d at 698; Farmers Tex. County Mut. Ins. Co. v. Griffin,
955 S.W.2d 81, 82 (Tex. 1997); Collier, 64 S.W.3d at 59; Lay v. Aetna
Ins. Co., 599 S.W.2d 684, 687 (Tex. Civ. App.CAustin 1980, writ ref=d n.r.e.). 

 

Id. at 818.

 

Here, an examination of the plaintiff=s third
amended petition includes summarized assertions that read as follows: 

(1) The Government
disclosed to the prior purchaser that the Property had, in fact, been used as
an artillery field.  In fact, the
Government stated that such Property was subject to contamination by introduction
of unexploded and dangerous bombs, shells, rockets, mines and charges either
upon or below the surface thereof;

 

(2) KB had actual
knowledge that the Property had been used as a practice range prior to and at
the time that KB purchased and developed the Property;

 

(3) KB knew that the
Property contained numerous unexploded bombs that were buried beneath the
surface of the Property.  These
unexploded bombs are dangerous and have the capability of inflicting bodily
injury and death which is why the U.S. Government indicated that the Property
be restricted to >above surface= use only;

 

(4) KB knew that the U.S.
Army Corp of Engineers had recommended that the unexploded ordnance be removed
prior to the development of the area;

 








(5) KB intentionally withheld material
information from the Homeowners that the homes they were purchasing were on top
of a bombing site;        

 

(6) KB acted
intentionally with malice in making their material misrepresentations and in
fraudulently concealing the truth from the Homeowners; and

 

(7) KB constructed the
homes in a negligent manner and was negligent in its supervision of its agents,
employees, and sub-contractors in connection with the sale and construction of
the homes.

 

Plaintiff=s fifth amended original
petition also includes summarized assertions as follows:

(1) KB did not hire a
contractor to remove the unexploded bombs, but instead constructed homes on top
of the bombing range;

 

(2) During the marketing
of the homes to the Plaintiffs, KB falsely represented that a recreational
facility was planned adjacent to the homes;

 

(3) Defendants knowingly
concealed information.  KB fraudly
concealed the material facts by reason of Plaintiff=s reliance on KB=s fraudelent
misrepresentation based on the fraudelent concealment of material facts;

 

(4) KB was negligent in
failing to remove the unexploded bombs from the ground upon which they built
and then sold Plaintiffs their homes.

 








As is often articulated in medical malpractice
cases, it is axiomatic that artful pleading cannot change the character of a
lawsuit.  In the vernacular, calling a
duck a chicken does not make it so.[5]  The essence of the complaint made by the
plaintiffs is that KB misrepresented and fraudulently concealed material facts
surrounding the sales of its homes.  The
purported facts that give rise to the alleged actionable conduct, not the legal
theory, control in determining the duty to defend.  Trinity Universal Co. v. Cowan, 945
S.W.2d 819, 829 (Tex. 1997); Great Am. Lloyds Ins. Co. v. Mittlestadt,
109 S.W.3d 784, 786-87 (Tex. App.CFort
Worth 2003, no pet.).  AThe duty
to defend must be determined here, as in other insurance cases, by comparing
the complaint=s factual allegations to the
policy=s actual
language.@  Lamar Homes, Inc., 239 S.W.3d at 249.








Again, the gravamen of the homeowners=
lawsuits is that KB knew of the dangerous conditions existing on its property
and intentionally misrepresented the property=s
condition and built the homes anyway. 
For there to be an Aoccurrence@ under
the policy, there must be an Aaccident,@ which
in this case, must have caused property damage, since no bodily injury is
alleged.  KB points this court to Gehan
Homes, Ltd. v. Employers of Mutual Casualty Co., 146 S.W.3d 833 (Tex. App.CDallas
2004, no pet.), as instructive in this case. 
We agree.  In Gehan, the
homebuilder was sued for, inter alia, negligently relying on a subcontractor=s
general soil analysis and for negligently designing or constructing a slab that
was inadequate for the existing soil conditions.  The court observed that two lines of cases
regarding Aoccurrence@ have
evolved.  AThe Maupin
line of cases >pertains to coverage of claims
against an insured for damage caused by its alleged intentional torts.=  Federated Mut. Ins. Co. v. Grapevine
Excavation, Inc., 197 F.3d 720, 723 (5th Cir. 1999).@  Id.  In Maupin, the plaintiff=s
allegation was that the insured acted intentionally, wrongfully, and willfully,
and the court held that there was no occurrence because the conduct was alleged
to be intentional.  Id.  AThe
second line of cases is derived from the Texas Supreme Court=s
decision in Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.,
416 S.W.2d 396 (Tex. 1967).@  Id. at 839.  The Orkin case involved an allegation
of negligence after a pesticide was applied to a rice mill and damaged the
rice.  The court found that the policy
term Aaccident@
included negligent acts that caused damage that was undesigned and unexpected.  Id. 
Later cases have held that the terms Aaccident@ and Aoccurrence@ include
damages that are unexpected, unforseen, or undesigned as a result of an insured=s
negligent behavior.  See, e.g., Great
Am. Ins. Co. v. Calli Homes, Inc., 236 F. Supp. 2d 693, 699 (S.D. Tex.
2002).  Further, the Dallas Court of Appeals
has observed the following:








There is not an accident
when the action is intentionally taken and performed in such a manner that it
is an intentional tort, regardless of whether the effect was unintended or
unexpected.  However, there is an
accident when the action is intentionally taken but is performed negligently
and the effect is not what would have been intended or expected had the
deliberate action been performed non-negligently.

 

Hallman v. Allstate Ins. Co., 114 S.W.3d 656,
660-61 (Tex. App.CDallas 2003) (citations
omitted), rev=d on other grounds, 159
S.W.3d 640 (Tex. 2005).  The Gehan
court, taking all the foregoing into account, found that the allegations of
negligence against the builder were Amore
than simply bare bones allegations.@  Gehan, 146 S.W.3d at 842.  

[T]he intentional act of
performing the contract was allegedly performed negligently.  The purported damage was an unexpected and
undesigned consequence of Gehan=s alleged negligence.  We conclude, therefore, that the insurers did
not establish as a matter of law that the Larsons= petition does not allege
an Aoccurrence@ under the terms of the
policy.  

 

Id. at 843 (citations omitted).








In our case, KB purports to fall under the Orkin
case line, but it is readily apparent that under both the Orkin and Maupin
lines of cases, KB=s actions do not constitute an Aoccurrence@ as the
term is defined in the policy.  The
dissimilarities between this case and Gehan are instructive.  According to Gehan, the builder did
not take the additional step of having an additional soil analysis done, as
opposed to possessing knowledge that the initial soil analysis was inadequate
and proceeded anyway.  In contrast, here,
KB allegedly possessed knowledge that the homes were being built on an
abandoned artillery field and proceeded anyway. 
Gehan allegedly negligently designed a slab that was not sturdy
enough for the soil.  KB intentionally
built homes on soil that it allegedly knew contained bombs.  The scenario before this Court is wholly
different from Gehan because the court there found that Athe
intentional act of performing the contract was allegedly performed negligently.@ Id.
The negligence allegations against KB areAsimply
bare bones allegations@ and are in fact recast
allegations of intentional conduct.  








Further, the exposure to fraudulent
representations and promises and untrue statements are not an Aoccurrence.@  State Farm Lloyds v. Kessler, 932
S.W.2d 732, 738 (Tex. App.CFort
Worth 1996, writ denied) (citing Houston Petroleum Co. v. Highlands Ins.
Co., 830 S.W.2d 153 (Tex. App.CHouston
[1st Dist.] 1990, writ denied)). 
Likewise, negligent representations are not an Aoccurrence@ under
the policy.  Grimes Constr., Inc.,
188 S.W.3d at 816-17.     Acts that are voluntary and intentional
generally do not cause an Aaccident,@ even if
the results are unexpected.  Argonaut
Sw. Ins. Co. v. Maupin, 500 S.W.2d 633, 634-35 (Tex. 1973); Decorative
Ctr. of Houston v. Employers Cas. Co., 833 S.W.2d 257, 259 (Tex. App.CCorpus
Christi 1992, writ denied).  We recognize
that, in general, while intentional acts do not cause Aaccidents,@ as
stated previously, intentional conduct does not automatically negate an Aoccurrence,@ unless
the harm from the intentional act was such a natural and foreseeable
consequence that no accident, and hence, no occurrence, was present.  Trinity Universal Ins. Co., 945 S.W.2d
at 827-28.  This court has held that
inadequate performance by subcontractors was a natural and foreseeable
consequence of their negligent hiring and supervision, and hence, such
negligent allegation was not a separate Aoccurrence.@  See Grimes Constr., Inc., 188
S.W.3d at 814-15.  Here, the resulting
mental anguish and economic loss to the detriment of the homeowners are plainly
a natural and foreseeable consequences of KB=s
decision to build a subdivision on an abandoned artillery range.  There was therefore no Aaccident@ and no Aoccurrence.@








KB also asserts that the homeowners incurred
property damages through the loss of use of their property even though the
property itself was not physically damaged. 
As previously recounted, the definition of Aproperty
damage@
includes Aphysical injury to tangible
property, including all resulting use of that property@ and Aloss of
use of tangible property that is not physically injured.@  It is worth noting that the plaintiffs=
underlying allegations of economic losses do not encompass, under Texas law,
property damage.  See Mittlestadt,
109 S.W.3d at 788; Houston Petroleum Co., 830 S.W.2d at 153. Returning
to the Aloss of
use@ portion
of the property damage definition, a loss of use is not what the plaintiffs=
pleading entails.  Specifically, the
pleadings state that APlaintiffs have suffered the
mental anguish associated with Plaintiffs=
concerns for their safety and that of their minor children and their families,
and their loss of enjoyment of life due to their inability to enjoy the
peaceful and quiet possession of their homes.@  This does not equate to a loss of use of
their property; it does equate to foreseeable mental anguish over their
concerns about their property.  We hold
that there was no Aaccident@ and no Aoccurrence@ under
the policy and that no property damage was alleged to have been incurred.

We hold that the absence of an Aoccurrence,@ and of
property damage under the terms of the policy, result in no coverage by EMC
under the policy issued to Kaufman and Broad Lone Star, L.P. 

VI.  Other
Claims








The extracontractual claims of violations of the
DTPA and Texas Insurance Code require a coverage finding.  Because no coverage exists, summary judgment
was proper as to these claims.  See
Emmert v. Progressive County Mut. Ins. Co., 882 S.W.2d 32, 36 (Tex. App.CTyler
1994, writ denied); Bartlett v. Am. Republic Ins. Co., 845 S.W.2d 342,
348-49 (Tex. App.CDallas 1992, no writ); Koral
Indus., Inc. v. Security-Connecticut Life Ins. Co., 788 S.W.2d 136, 147
(Tex. App.CDallas 1990, no writ).  The same is true of the alleged section
542.051 insurance code violation (prompt payment of claims).  See Progressive County Mut. Ins. Co. v.
Boyd, 177 S.W.3d 919, 922 (Tex. 2005); Mid-Century Ins. Co. of Tex. v.
Barclay, 880 S.W.2d 807, 811 (Tex. App.CAustin
1994, writ denied).  KB=s first
issue is overruled.

VII.  Texas
Insurance Code Article 21.55

In its second issue, KB asserts error on the part
of the trial court in denying its motion for partial summary judgment regarding
EMC=s
alleged violation of article 21.55 of the Texas Insurance Code, concerning
insurers=
penalties for failure to promptly pay claims. 
The KB parties Aacknowledge that this court held
to the contrary in Ulico Cas. Co. v. Allied Pilots Ass=n, 187
S.W.3d 91 (Tex. App.CFort Worth 2005, pet. granted)
(following TIG Ins. Co. v. Dallas Basketball, Ltd., 129 S.W.3d 232 (Tex.
App.CDallas
2004, pet. denied)).@ 
As such, KB=s second issue is overruled.

VIII. 
Conclusion

Having overruled KB=s
issues, we affirm the judgment of the trial court.

 

 

BOB
MCCOY

JUSTICE

 

PANEL B:   LIVINGSTON,
WALKER, and MCCOY, JJ.

 








DELIVERED: January 31,
2008

 











[1]See Tex. R. App. P. 47.4.





[2]KB=s pleadings assert that Kaufman
& Broad Lone Star, L.P. is also known as KB Home Lone Star, L.P.





[3]KB=s arbitration pleading
reads,

 

Alter Ego/Single Business
Enterprise/Respondeat Superior

 

36.   Plaintiffs, pleading in the alternative,
would show that KB Home Lone Star, L.P., and/or Kaufman & Broad of Texas,
Ltd. is the alter ego of KB Home f/k/a Kaufman & Broad Home Corporation.

 

37.   Plaintiffs also plead a single business
enterprise theory of recovery against all Defendants save and except Tom
Bannon.

 

38.   Tom Bannon was acting as the agent for KB
Home and as such, KB Home is responsible on the theory of respondeat superior.





[4]This has most recently
been articulated by our supreme court in Lamar.  AThe duty to defend must be determined here, as in
other insurance cases, by comparing the complaint=s factual allegations to
the policy=s actual language.@  Lamar Homes, Inc. v. Mid-Continent Cas.
Co., 239 S.W.3d 236, 249 (Tex. 2007).





[5]AThat which looks like a
duck, walks like a duck, and quacks like a duck, will be treated as a duck even
though some would insist upon calling it a chicken.@  Tidelands Marine Serv. v. Patterson,
719 F.2d 126, 128 n.3 (5th Cir. 1983).