**GRIMES CONSTRUCTION, INC., Appellant,**

v.

**GREAT AMERICAN LLOYDS INSURANCE COMPANY, Appellee.**

No. 2–04–335–CV.

Court of Appeals of Texas, Fort Worth.

March 9, 2006.

---

**35.** *Teague,* 2004 WL 626798, at *1–2.

**36.** *Id.*

Todd A. Haba, Bush & Motes, P.C., Arlington, for Appellant.

Christopher "Kipper" Burke, Miller & Burke, P.C., San Antonio, Richard P. Hogan, Jr. and Jennifer Bruch Hogan, Hogan & Hogan, L.L.P., Houston, for Appellee.

Panel A: LIVINGSTON, DAUPHINOT, and McCOY, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

This case arises out of a previous dispute between Owen and Karen Cox and Appellant Grimes Construction, Inc. regarding alleged defects in the home that Appellant constructed for the Coxes. Appellant's insurer, Appellee Great American Lloyds Insurance Company, denied that it owed a duty to defend or a duty to indemnify Appellant in the suit or resulting arbitration, and this case ensued. The trial court granted Appellee's motion for summary judgment and denied Appellant's motion for partial summary judgment. Because we hold that Appellee did not owe a duty to defend or a duty to indemnify Appellant and did not violate Article 21.55 of the Texas Insurance Code, we affirm the trial court's judgment.

## I. Factual and Procedural Background

Appellant contracted to construct a house for the Coxes in November 1998. Appellee issued a commercial general liability (CGL) policy to Appellant for the construction of the house. Appellant finished working on the house in December 1999 or January 2000. In March 2000, Appellant sued the Coxes, seeking payment under the terms of the contract. The Coxes filed a counterclaim, seeking damages for faulty construction of the resi-

dence, failure to complete the residence timely, false representations, and failure to construct the residence in a good and workmanlike manner. Additionally, the Coxes included causes of action for breach of contract, breach of express and implied warranties, fraud, misrepresentation, and negligent misrepresentation. The case proceeded to arbitration, and the Coxes, in their demand for arbitration, continued to allege that Appellant had failed to complete the residence timely, made false representations, and failed to construct the residence in a good and workmanlike manner. They also asserted claims for breach of express and implied warranties, negligence, negligent hiring and supervision, fraud, misrepresentation, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act (DTPA),[1] and breach of contract and requested attorney's fees. The case settled before the arbitration proceeding was adjudicated. Pursuant to the settlement agreement, Appellant paid the Coxes $52,653.51.

In response to the Cox suit, Appellant filed a claim with Appellee to defend and indemnify it. Appellee denied coverage of the claim and denied its duty to defend or indemnify Appellant. Appellee filed a declaratory judgment action seeking a declaration that it did not owe a duty to pay for the defense of or to indemnify Appellant in the Cox suit and related arbitration. Appellant counterclaimed, seeking a declaration that Appellee did owe a duty to defend and indemnify it and alleging that Appellee had breached a duty of good faith and fair dealing and had violated the Texas Insurance Code. Both parties filed motions for summary judgment. The trial court issued a final judgment granting Appellee's motion and denying Appellant's motion.

---

1. *See* Tex. Bus. & Com.Code Ann. §§ 17.46(b), 17.50 (Vernon Supp.2005).

In three issues, Appellant argues that the trial court erred by granting Appellee's motion for summary judgment and denying Appellant's motion for summary judgment regarding 1) the duty to defend, 2) the duty to indemnify, and 3) Article 21.55 of the Texas Insurance Code. We disagree.

## II. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[2] The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.[3] Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.[4]

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true.[5] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[6]

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's defense as a matter of law.[7]

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented.[8] The reviewing court should render the judgment that the trial court should have rendered.[9]

## III. Legal Analysis

### A. Duty to Defend

The duty to defend is determined by the allegations in the underlying pleadings and the language of the insurance policy.[10] This standard is referred to as the "eight corners" rule.[11] When we apply the "eight corners" rule, we give the allegations in the pleadings a liberal interpretation in favor of the insured.[12] In other words, "in a case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor."[13] The facts alleged in the pleadings against the insured are presumed to

---

2. Tex.R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

3. *Sw. Elec. Power Co.*, 73 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

4. *Great Am.*, 391 S.W.2d at 47.

5. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995).

6. *Great Am.*, 391 S.W.2d at 47.

7. *Clear Creek Basin*, 589 S.W.2d at 678.

8. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

9. *Id.*

10. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

11. *Id.*

12. *Id.*

13. *Id.* (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

be true when gauging the insurer's duty to defend.[14] However, the court may not read facts into the pleadings, look outside the pleadings, or "imagine factual scenarios which might trigger coverage."[15] A liability policy obligates the insurer to defend the insured against any claim that could potentially be covered, regardless of the claim's merits.[16] A duty to defend any of the claims against an insured requires the insurer to defend the entire suit.[17]

In its first issue, Appellant asserts that the trial court erred in granting Appellee's motion for summary judgment and denying Appellant's motion for summary judgment with respect to the duty to defend. Specifically, Appellant argues that a CGL policy covers inadvertent defects, that the "occurrence" and "property damage" definitions have been satisfied, and that there are no exclusions applicable to bar coverage. We disagree that the alleged damage to the Coxes' house was the result of an "occurrence."

### 1. Occurrence

The insurance policy obligates Appellee to defend and indemnify Appellant for all claims of "property damage" caused by an "occurrence." "Occurrence" is defined as "an accident, including continuous or re-

peated exposure to substantially the same general harmful conditions." The policy does not define "accident."

■ Interpretation of insurance policies is governed by the rules of contract interpretation.[18] The words in an insurance policy are given their ordinary meaning unless the policy clearly gives them a different meaning.[19] In addition, the Texas Supreme Court has held that the term accident included "negligent acts of the insured causing damage which is undesigned and unexpected."[20] More recently, the Texas Supreme Court in *Mid–Century Insurance Co. of Texas v. Lindsey* held that two factors are to be considered in determining whether an act or omission constitutes an accident: (i) whether the actor intended to cause damage to others and (ii) the reasonably foreseeable effect of the actor's intended conduct.[21] With regard to the first factor, effects that the actor did not intend to produce and that he cannot be charged with the design of producing are produced by accidental means.[22] On the other hand, intentional actions are generally not accidental and, thus, are not occurrences.[23] With regard to the second factor, effects that are anticipated or foreseeable are generally not accidental.[24] As

**14.** *Heyden Newport Chem. Corp.*, 387 S.W.2d at 24.

**15.** *Merchants Fast Motor Lines*, 939 S.W.2d at 142.

**16.** *Heyden Newport Chem. Corp.*, 387 S.W.2d at 26.

**17.** *CU Lloyd's of Tex. v. Main Street Homes, Inc.*, 79 S.W.3d 687, 692 (Tex.App.-Austin 2002, no pet.); *Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 728 (Tex.App.-Austin 2000, no pet.); *Pro–Tech Coatings, Inc. v. Union Standard Ins. Co.*, 897 S.W.2d 885, 892 (Tex.App.-Dallas 1995, no writ).

**18.** *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994).

**19.** *Sec. Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex.1979).

**20.** *Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 400 (Tex.1967).

**21.** *Mid–Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153, 155 (Tex.1999).

**22.** *Id.; Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827 (Tex.1997).

**23.** *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973).

**24.** *Lindsey*, 997 S.W.2d at 155.

stated, both factors play a role in the determination.[25]

Here, the demand for arbitration constitutes the "petition" to which the court is required to look to determine if the allegations against the insured were covered by the policy.[26] The Coxes' demand for arbitration contains allegations of breach of express and implied warranties, negligence, negligent hiring and supervision, fraud, misrepresentation, negligent misrepresentation, violations of the DTPA, and breach of contract.

### a. Negligence

■ The Coxes claimed that Appellant was negligent in constructing their home. The purported facts that give rise to the alleged actionable conduct, not the legal theories, control in determining the duty to defend.[27] Thus, several courts have held that even when the petition asserts theories of negligence, if the factual allegations contained in the petition are based on other claims, such as the contractor's fail-

ure to construct the building in accordance with the contract and implied warranties, no occurrence is alleged.[28] For example, in *Jim Johnson Homes*, the court held that artful pleading suggesting that acts were negligent could not overcome the basic facts underlying the claims.[29] "The allegation that [the insurer] was negligent [was] simply an embellishment on, and a recharacterization of, the basic breach of contract and fraud claims."[30] Likewise, the court in *Lamar Homes* held that there was no occurrence "in spite of broad negligence allegations" because "the gravamen of the complaint [was] breach of warranty: [the contractor] did not build the ... home in the fashion and to the standard to which [the contractor] represented ... that it would."[31] In other words, "[t]he use of legal legerdemain or mere characterization of an act as negligence does not overcome the basic facts underlying the claims and thus compel coverage."[32] Other courts have similarly denied coverage by concluding that allegations of faulty workmanship are simply not accidents or occurrences.[33]

25. *Id.*

26. *See, e.g., Jim Johnson Homes Inc. v. Mid–Continent Cas. Co.*, 244 F.Supp.2d 706, 714 (N.D.Tex.2003).

27. *Trinity Universal Ins. Co.*, 945 S.W.2d at 829; *Great Am. Lloyds Ins. Co. v. Mittlestadt*, 109 S.W.3d 784, 786–87 (Tex.App.-Fort Worth 2003, no pet.).

28. *See, e.g., Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 372 (5th Cir.1998); *Jim Johnson Homes*, 244 F.Supp.2d at 716–17.

29. *Jim Johnson Homes*, 244 F.Supp.2d at 716–17.

30. *Id.*

31. *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 335 F.Supp.2d 754, 760 (W.D.Tex.2004). After the insured appealed, the Fifth Circuit Court certified three questions to the Texas Supreme Court, which that court accepted: (1) When a homebuyer sues his general con-

tractor for construction defects and alleges only damage to or loss of use of the home itself, do such allegations allege an "accident" or "occurrence" sufficient to trigger the duty to defend or indemnify under a CGL policy? (2) When a homebuyer sues his general contractor for construction defects and alleges only damage to or loss of use of the home itself, do such allegations allege "property damage" sufficient to trigger the duty to defend or indemnify under a CGL policy? (3) If the answers to certified questions 1 and 2 are answered in the affirmative, does Article 21.55 of the Texas Insurance Code apply to at CGL insurer's breach of the duty to defend? *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 428 F.3d 193 (5th Cir.2005).

32. *Tealwood Constr., Inc. v. Scottsdale Ins. Co.*, No. Civ. A. 3:02–CV–2159–L, 2003 WL 22790856, at *6 (N.D.Tex. Nov.19, 2003).

33. *See, e.g., id.; Jim Johnson Homes*, 244 F.Supp.2d at 716–17; *Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 277–78 (Tex.

On the other hand, different courts addressing this issue have concluded that allegations of negligence or defective workmanship do constitute an occurrence.[34] For example, in *Gehan Homes v. Employers Mutual Casualty Co.*, the Dallas Court of Appeals held that negligence in failing to obtain an accurate soil analysis upon which to base a foundation design constituted an occurrence.[35] The court also noted that "[t]here is a vast difference between a court analyzing pleadings to determine whether there is a claimed 'occurrence' on the face of the pleadings and a court conducting an evaluation of the merits of the underlying claim." [36] The court stated that deciding that the negligence claims have no merit because they are simply a recast of the contract allegations would be inappropriately evaluating the merits of the claim.[37] We disagree.

■ Here, the Coxes' negligence claim contains allegations that appear, from the face of the demand for arbitration, to stem from the contractual and warranty obligations owed by Appellant to the Coxes. The majority of the assertions specifically refer to the contract, or "the plan," and the others appear to be extensions of breach of warranty claims. Although the Coxes' demand for arbitration contains more than just conclusory allegations of negligence,[38] the supporting facts advance a conclusion that the alleged negligence is merely an extension of other claims. Thus, even though we construe such allegations in favor of the insured, we hold that the Coxes' negligence allegation is simply a recharacterization of their basic breach of contract and warranty claims, which are the gravamen of the complaint. The Coxes entered into a contract for Appellant to construct their house, and Appellant did not construct the house as the Coxes expected and desired. In other words, the Coxes' injury was that "the house they were promised and paid for was not the house they received." [39]

The Fifth Circuit's *Federated Mutual Insurance Co. v. Grapevine Excavation* is among the line of cases holding that allegations of damage caused by faulty workmanship do constitute an occurrence.[40] In that case, a subcontractor alleged that its CGL carriers had a duty to defend it when the general contractor sued it for damaging another subcontractor's work.[41] That court noted that the property damage was "damage done to property *other than* the

App.-Houston [1st Dist.] 2001, no pet.); *Devoe v. Great Am. Ins.*, 50 S.W.3d 567, 572 (Tex. App.-Austin 2001, no pet.).

**34.** *See, e.g., Mid–Continent Cas. Co. v. JHP Development, Inc.*, No. Civ. A. SA04CA–192–XR, 2005 WL 1123759, at *4 (W.D.Tex. Apr.21, 2005); *Luxury Living, Inc. v. Mid–Continent Cas. Co.*, No. Civ. A. H–02–3166, 2003 WL 22116202, at *13–16 (S.D.Tex. Sept.10, 2003); *Great Am. Ins. Co. v. Calli Homes, Inc.*, 236 F.Supp.2d 693, 698–702 (S.D.Tex.2002); *Gehan Homes Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 842 (Tex. App.-Dallas 2004, pet. filed); *CU Lloyd's of Tex.*, 79 S.W.3d at 693 (holding that if intentionally performed acts are not intended to cause harm but do so because of negligent performance, there is a duty to defend); *see also Lennar Corp. v. Great Am. Ins. Co.*, No.

14–02–00860–CV, 2006 WL 406609, at *12–13 (Tex.App.-Houston [14th Dist.] Feb. 23, 2006, no pet. h.) (op. on reh'g).

**35.** *Gehan Homes*, 146 S.W.3d at 842.

**36.** *Id.*

**37.** *Id.* at 842–43.

**38.** *Contra, e.g., Tealwood Constr.*, 2003 WL 22790856, at *7.

**39.** *See Lamar Homes*, 335 F.Supp.2d at 760.

**40.** *Federated Mut. Ins. Co. v. Grapevine Excavation*, 197 F.3d 720, 726 (5th Cir.1999).

**41.** *Id.* at 722.

work the insured had contracted to do." [42] The *Jim Johnson Homes* court and the *Tealwood Construction, Inc. v. Scottsdale Insurance Co.* court found this distinction important.[43] In *Jim Johnson Homes*, which involved facts and allegations similar to the case at hand, the court stated that *Grapevine* and similar cases were "readily distinguishable" because

> the property damage at issue was damage done to property other than the work the insured had contracted to do. In contrast, in the instant action the only damage claimed by the [homeowners] was to the work plaintiff was to do pursuant to its contract with [the homeowners]. This distinction was determinative of the outcome of [*Grapevine* ] and the [other] cases.[44]

We agree. Although the court in *Mid–Continent Cas. Co. v. JHP Development, Inc.* believed that attempting to distinguish *Grapevine* on this basis was unfounded,[45] the *Grapevine* court itself stated that "courts have consistently held that damage wreaked on the work product of a third party—as opposed to that of the insured—is presumed to have been unexpected and therefore, constitutes an occurrence." [46] We agree with *Jim Johnson* that *Grapevine* is distinguishable. *Grapevine* does not apply here because the only damage was to work that Appellant, the insured, contracted to perform.

Although Appellant cites this court's *Mid–United Contractors, Inc. v. Providence Lloyds Insurance Co.* as precedential, that case is distinct from the case at hand.[47] In that case, the underlying pleadings alleged several causes of action, including negligence, and this court held that the insurer did have a duty to defend the contractor.[48] However, this holding was based on—and this court's discussion revolved around—the inapplicability of a policy exclusion.[49] Whether there was even an occurrence to begin with was not addressed or discussed, and the issue does not appear to have been before the court.[50] Moreover, the majority of the cases cited above, including Texas Supreme Court cases refining the meaning of an accident in the context of the definition of an occurrence, postdate the *Mid–United* case. Therefore, we conclude that *Mid–United* is not binding precedent upon this case.

In addition, in construing the plain meaning of the terms, we are not prepared to hold that negligence alleged to have occurred throughout the majority of the term of the contract causing foundation-related problems that the Coxes described as taking place "over an extended period of time" is an occurrence. A "reasonably foreseeable effect" of not complying with the construction plan and, instead, negligently performing construction duties is that the resulting home will suffer damages such as those alleged. Because the damages were reasonably foreseeable,[51]

42. *Id.* at 725 (emphasis added).

43. *Jim Johnson Homes*, 244 F.Supp.2d at 718; *Tealwood Constr.*, 2003 WL 22790856, at *6.

44. *Jim Johnson Homes*, 244 F.Supp.2d at 718.

45. *JHP Development*, 2005 WL 1123759, at *4.

46. *Grapevine*, 197 F.3d at 725 (citation omitted).

47. *See Mid–United Contractors, Inc. v. Providence Lloyds Ins. Co.*, 754 S.W.2d 824, 825 (Tex.App.-Fort Worth 1988, writ denied).

48. *Id.* at 828.

49. *Id.* at 826–28.

50. *Id.* at 827–28.

51. *See Lindsey*, 997 S.W.2d at 155.

the alleged acts do not qualify as an unexpected occurrence. To hold otherwise, considering the facts of this case, would inappropriately broaden the scope of coverage of the CGL policy.

### b. Negligent Hiring and Supervision

The Coxes also asserted claims of negligent hiring and negligent supervision of Appellant's subcontractors, alleging that the negligence of one or more subcontractors caused some of the damages. In support of this allegation, in other portions of the demand for arbitration, the Coxes asserted that Appellant "failed to obtain a firm bid from and employ the services of a reputable subcontractor for the sub-contract associated with the foundation." Also, the Coxes alleged that Appellant "negligently failed to provide the foundation plan addendum to the pier drilling subcontractor, causing the foundation to be constructed in a manner that did not comply with the plan." They alleged that Appellant's subcontractor "negligently installed foundation piers" and that Appellant "negligently failed to coordinate and supervise the work of its subcontractors and failed to ensure that the work was performed in accordance with building codes, construction standards, and [the Coxes'] specifications."

In *King v. Dallas Fire Insurance Co.*, the Texas Supreme Court held that negligent hiring, training, and supervision constituted an occurrence under a CGL policy.[52] In that case, a third party sued a construction company for injuries he received when one of the construction company's employees attacked him.[53] The plaintiff alleged several causes of action, including negligent hiring, training, and supervision of the employee.[54] The insurer refused to defend the construction company, and the construction company brought a declaratory judgment action, asking the trial court to declare that the insurer owed it a duty to defend it in the underlying suit.[55] The trial court concluded that there was no duty to defend, and the court of appeals affirmed.[56] The Texas Supreme Court reversed, holding that there was a duty to defend because negligent hiring, training, and supervision constituted an occurrence although the injury was directly caused by the employee.[57]

Appellee argues that *King* is distinguishable on the ground that the employee's attack was intentional and outside of the course and scope of employment. We agree. Like the policy in our case, the *King* policy contained a separation of insureds provision and an exclusionary provision that indicated that whether an occurrence was an accident depended on the standpoint of the insured, not the employee.[58] We believe that the facts of *King* were sufficient to pass the *Lindsey* two-pronged test for accident because there was no intent by the employer to cause damage and the effect of the actor's intended conduct was not foreseeable.[59] Clearly, in hiring and supervising its employees, the insured in *King* did not intend to cause damage to others. In addition, under general principles of tort law, an employee's intentional tort, such as that committed by the *King* employee, is gen-

---

52. *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 186 (Tex.2002).

53. *Id.*

54. *Id.*

55. *Id.* at 187.

56. *Id.*

57. *Id.* at 186–87.

58. *Id.* at 188.

59. *See Lindsey,* 997 S.W.2d at 155.

erally considered outside of the scope of employment.[60] Thus, from the standpoint of the insured in *King,* in hiring and supervising its employees, it was not foreseeable to the insured that they would commit intentional torts or crimes.

■ But we believe that a subcontractor's actions performed in furtherance of its contractual duties are more foreseeable than torts generally considered outside of the course and scope of employment. In the present case, the Coxes did not allege that the subcontractor committed an intentional tort or crime but rather that it was negligent. Like the contractor in *King,* Appellant did not intend its subcontractors' behavior. That is, Appellant did not intend for its subcontractors to perform negligently. However, we believe that a reasonably foreseeable result of any negligence in Appellant's hiring and supervision of its subcontractor is that the subcontractor could perform negligently and produce a defective work product. Thus, the facts of this case are distinguishable from those in *King,* and we hold that the negligent hiring and supervision alleged by the Coxes was insufficient to qualify as an occurrence and therefore insufficient to trigger a duty to defend.

In *Archon Invs. Homes Inc. v. Great Lloyds Insurance Co.,* the First District Court of Appeals in Houston distinguished situations in which the work was done by a subcontractor rather than the contractor itself in analyzing whether negligence in general could be an occurrence, holding that the contractor could not have intended or expected negligent work of its sub-

contractors that would cause physical damage.[61] In *Archon Investments,* the homeowner sought to recover damages caused by work done on the contractor's behalf by a subcontractor.[62] The court held that because the contractor could not have intended that the negligent work of its subcontractors cause physical damage to the homeowner's property, there was an occurrence.[63]

Even if we were to agree with this rationale, which we do not, the factual contentions alleged in this case distinguish it from *Archon's* reasoning. The Coxes' allegations of negligence assert ten instances of negligent conduct, and only one directly charges the subcontractor itself with negligent actions. The remainder of the allegations refer to the Appellant's allegedly negligent actions. Thus, the essence of the cause of action stems from the actions of Appellant itself rather than its subcontractor, which, as discussed in detail above, we believe are foreseeable. The one remaining allegation asserts that the subcontractor negligently installed foundation piers, and that Appellant is vicariously liable for this. Aside from the vicarious liability issue, discussed below, we agree that Appellant may not have intended for the subcontractor to negligently install the piers.[64] However, we also believe, as emphasized above, that a reasonably foreseeable result of any negligence in Appellant's hiring and supervision of its subcontractor is that the subcontractor could perform negligently and produce a defective work product. Thus, the second *Lindsey* factor weighs

---

**60.** *Wrenn v. G.A.T.X. Logistics, Inc.,* 73 S.W.3d 489, 494 (Tex.App.-Fort Worth 2002, no pet.).

**61.** *Archon Invs. Homes Inc. v. Great Am. Lloyds Ins. Co.,* No. 01–03–01299–CV, 2005 WL 2037177, at *5 (Tex.App.-Houston [1st Dist.] Aug. 25, 2005, pet. filed).

**62.** *Id.*

**63.** *Id.*

**64.** *See Lindsey,* 997 S.W.2d at 155.

against finding that an accident occurred.[65] Unlike this court, the *Archon* court was not faced with allegations of the general contractor's negligent hiring or supervising of its negligent subcontractor, but rather allegations of general negligence.[66]

Consequently, we hold that allegations of negligent hiring and supervision in this case do not constitute an occurrence.

### c. Vicarious Liability

As noted above, one of the Coxes' allegations of negligence asserts that the subcontractor negligently installed foundation piers and that Appellant is vicariously liable for this negligence. Under Texas law, an employer, such as a contractor, is generally not vicariously liable for the negligence of its subcontractor.[67] However, it may be liable for the negligence of its subcontractor if it retains the right or power to control the manner in which the subcontractor performs its work but fails to exercise reasonable care in supervising the contractor.[68]

In *King*, the original plaintiff had also asserted a claim of *respondent superior*, but that issue was not before the Texas Supreme Court.[69] Although the *Jim Johnson* court did not discuss vicarious liability as a separate issue, vicarious liability for a subcontractor's actions was one of the claims alleged against the contractor.[70] When the facts alleged against the contractor did not constitute an occurrence, allegations of vicarious liability did not change the court's analysis.[71]

Similarly, in our case, the insurance policy provides that Appellant is the "named insured." The policy contains a separation of insureds provision, providing that the insurance applies as if each named insured were the only named insured. Appellant appears to be the only named insured, and we are to view whether an occurrence is an accident is based on the standpoint of the insured.[72] Thus, we believe that whether the general contractor's insurance company owes the general contractor a duty to defend based on allegations of vicarious liability for its subcontractor still depends on whether there was an occurrence from the standpoint of the general contractor. As discussed above with regard to the negligent hiring and supervision claim, we believe that the subcontractor's negligence in this case, viewed from the standpoint of Appellant, is not sufficient to constitute an occurrence.

### d. Fraud, Misrepresentation, and Negligent Misrepresentation

The Coxes' demand for arbitration also contained allegations of fraud, misrepresentation, and negligent misrepresentation. As stated, the definition of occurrence in our policy is an accident, including exposure to harmful "conditions." Applying the plain meaning doctrine to a similar definition, this court has previously held in *State Farm Lloyds v. Kessler* that "misrepresentations and failures to disclose are not 'conditions' that a person or property

**65.** *See id.*

**66.** *Archon Investments,* 174 S.W.3d 334, 336, 339.

**67.** *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 469 (Tex.1998) (citing *Baptist Mem'l Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 947 (Tex.1998)).

**68.** *Id.* (citing *Hoechst–Celanese Corp. v. Mendez,* 967 S.W.2d 354, 356 (Tex.1998)).

**69.** *King,* 85 S.W.3d at 186.

**70.** *Jim Johnson Homes,* 244 F.Supp.2d at 712.

**71.** *See id.* at 712–17.

**72.** *See King,* 85 S.W.3d at 188.

can be 'exposed' to under the policies."[73] Similarly, the court in *Houston Petroleum Co. v. Highlands Insurance Co.* held that exposure to fraudulent promises, false representations, and untrue statements did not, as a matter of law, fall within the plain meaning of the definition of occurrence.[74] The court stated that "[t]o hold otherwise would require us to unnaturally extend the definition of the term 'conditions.'"[75] Therefore, we hold that the allegations of fraud and misrepresentation do not allege an occurrence.

Just as courts are divided on the issue of whether negligence in general is an accident, courts are similarly split on the question of whether negligent misrepresentation constitutes an accident.[76] Although *Kessler* involved intentional misrepresentation, under the plain meaning doctrine and our holding above that the negligence alleged in this case does not constitute an occurrence, the *Kessler* rationale would apply equally to claims of negligent misrepresentation, especially in light of our discussion of negligence in general. Consequently, we also hold that the allegation of negligent misrepresentation does not raise an occurrence.

### e. Breach of Express and Implied Warranties and Breach of Contract

 The Coxes' demand for arbitration also alleges that Appellant breached express and implied warranties. Lack of compliance with warranties has been held not accidental, but the result of the insured's not doing what it was required to do.[77] By not doing what it is required to do under its contract, an insured can reasonably anticipate the injury that will result.[78] The same reasoning applies to breach of contract, because by not complying with contractual obligations, an insured can reasonably anticipate that injury will result. Thus, the allegations of breach of express and implied warranties and breach of contract are not accidents; consequently, they are not occurrences.

### f. DTPA Violations

 The Coxes' demand for arbitration also alleges that Appellant violated the DTPA because it made false representations, breached express and implied warranties, and engaged in an unconscionable action or course of action. The reasoning provided in support of our conclusion that the above allegations are not occurrences applies to these similar DTPA allegations as well. In addition, the Coxes alleged that Appellant had "actual awareness of the falsity, deception, or unfairness of its acts and practices and acted with a specific intent that [the Coxes] act in detrimental reliance" on them. By the very language of the petition, these actions were not accidental—they are not "effects that the insured did not intend to produce" or effects

---

73. *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 738 (Tex.App.-Fort Worth 1996, writ denied). The definition of occurrence at issue in that case was "an accident, including exposure to conditions, which results in ... property damage during the policy period." (Emphasis removed.)

74. *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 156 (Tex.App.-Houston [1st Dist.] 1990, writ denied).

75. *Id.*

76. *See Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 679 A.2d 540, 550 (1996).

77. *Hartrick*, 62 S.W.3d at 278.

78. *Id.*

that the insured "cannot be charged with the design of producing."[79] Thus, the allegation of DTPA violations does not constitute an occurrence.

Because we have held that there was no occurrence, Appellee owed no duty to defend Appellant in the Cox–Appellant suit, and we do not need to decide if there was "property damage" or if any exclusions to coverage apply.[80] We overrule Appellant's first issue.

### B. Duty to Indemnify

In its second issue, Appellant argues that the that the trial court erred by granting Appellee's motion for summary judgment and denying Appellant's motion for summary judgment regarding the duty to indemnify. We disagree.

 An insurer's duty to defend its insured is separate and distinct from its duty to indemnify.[81] The duty to indemnify is not based on the pleadings in the underlying lawsuit, but on the facts that establish liability.[82] It arises only after the insured has been adjudicated legally responsible for damages in a lawsuit by judgment or settlement.[83] The duty to defend is thus broader than the duty to indemnify; if an insurer has no duty to defend, it has no duty to indemnify.[84]

Because we have held that Appellee did not owe Appellant a duty to defend in the Cox–Appellant suit, Appellee also did not owe a duty to indemnify Appellant. We overrule Appellant's second issue.

### C. Article 21.55 of the Texas Insurance Code

Appellant contends in its third issue that the trial court erred by granting Appellee's motion for summary judgment and denying Appellant's motion for summary judgment regarding former Article 21.55 of the Texas Insurance Code because Appellee wrongfully refused and delayed payment of the Coxes' claim for defense costs. Because we have held that the underlying claims did not trigger a duty to defend in this case, we overrule Appellant's third issue.

### IV. Conclusion

Having overruled all of Appellant's issues, we affirm the trial court's judgment.

McCOY, J. concurs without opinion.

---

79. *Lindsey,* 997 S.W.2d at 155.

80. *See* TEX.R.APP. P. 47.1; *Devoe,* 50 S.W.3d at 572.

81. *Calli Homes,* 236 F.Supp.2d at 697.

82. *Id.* at 698; *Mittlestadt,* 109 S.W.3d at 786–87.

83. *Collier v. Allstate County Mut. Ins. Co.,* 64 S.W.3d 54, 62 (Tex.App.-Fort Worth 2001, no pet.).

84. *Calli Homes,* 236 F.Supp.2d at 698; *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997); *Collier,* 64 S.W.3d at 59; *Lay v. Aetna Ins. Co.,* 599 S.W.2d 684, 687 (Tex.Civ.App.-Austin 1980, writ ref'd n.r.e.).