COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-383-CV

KB HOME F/K/A KAUFMAN AND      APPELLANTS

BROAD HOME CORPORATION, 

KAUFMAN AND BROAD LONE 

STAR, L.P., KB HOME LONE 

STAR, L.P., KAUFMAN AND BROAD 

OF TEXAS, LTD., AND TOM BANNON

V.

EMPLOYERS MUTUAL           APPELLEE

CASUALTY COMPANY 

------------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In three issues, Appellants KB Home f/k/a Kaufman and Broad Home Corporation, Kaufman and Broad Lone Star, L.P., KB Home Lone Star, L.P., Kaufman and Broad of Texas, Ltd., and Tom Bannon (collectively, “KB”) assert that the trial court erred by granting Appellee Employers Mutual Casualty Company’s (“EMC”) motion for summary judgment and denying KB’s motion for partial summary judgment.  We affirm.

II.  Background

A.  Facts

In 2001, over 230 homeowners from the Arlington neighborhood of Southridge Hills filed or intervened in two lawsuits against KB.  In the underlying litigation, the various homeowners alleged that the homes they purchased were developed on property previously utilized by the United States government for munitions testing.  As a result of the testing, an unknown number of unexploded bombs existed within the property.  The homeowners asserted that KB developed the property for residential use despite its knowledge of the property’s prior use and the presence of the unexploded bombs.  The homeowners further alleged that KB failed to disclose the information and misrepresented the property’s prior use.  The suit eventually landed in arbitration before the American Arbitration Association.  

B.  The Insurance Policy

Kaufman and Broad Lone Star, L.P. was the named insured under an EMC policy effective from March 26, 1999, to March 26, 2000.  It reads in part the following:

Throughout this policy the words “you” and “your” refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. . . . 

The word “insured” means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

. . . .

SECTION I - COVERAGES

COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies.  We will have the right and duty to defend the insured against any “suit” seeking those damages.  However, we will have no duty to defend the insured against any “suit” seeking damages for “bodily injury” or “property damage” to which this insurance does not apply. . . .

. . . . 

b.  This insurance applies to “bodily injury” and “property damage” only if:

(1) The “bodily injury” or “property damage” is caused by an “occurrence” that takes place in the “coverage territory”; and

(2) The “bodily injury” or “property damage” occurs during the policy period.

. . . .

SECTION V - DEFINITIONS

. . . .

12. “Occurrence” means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . . .

15. “Property damage” means:

a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it, or

b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the “occurrence” that caused it.

C.  Insurance Litigation

In February 2005 and October 2005, KB notified EMC of the homeowners’ claims and demanded that EMC defend KB in the suits by the homeowners.  EMC declined to defend KB. 

Litigation between EMC and KB ensued, and in its first amended original petition, EMC pleaded that “EMC does not believe that it is under any duty to defend or indemnify Defendants in connection with the underlying lawsuit and prays for a declaration that it owes no such duties as a matter of law.”  KB filed their counterclaims against EMC and sought a declaration compelling EMC’s compliance with its contract, i.e., defense against the homeowners’ lawsuits, for damages resulting from EMC’s bad faith, and for damages resulting from EMC’s alleged violations of articles 21.21 and 21.55
 of the Texas Insurance Code; KB moved for partial summary judgment on its requested declaration of EMC’s duty to defend against the homeowners’ lawsuits and on its alleged violations of article 21.55 of the insurance code resulting from alleged wrongful refusal or failure to pay the claim.

EMC followed with its own motion for summary judgment, seeking a declaration that it did not owe a duty of defense or indemnity to its insured or other claimants and also requested summary judgment in its favor on all other counterclaims.

The trial court initially granted KB’s partial motion for summary judgment and denied EMC’s motion.  EMC requested clarification of the trial court’s order and also filed a motion for reconsideration and for new trial.  On June 29, 2006, the trial court withdrew its initial order, and it issued a new order granting EMC’s motion for summary judgment on September 20, 2006.

Because of concerns about the finality of the trial court’s order, we ordered an appeal to this court abated pending clarification of the trial court’s intentions with regard to the disposition of KB’s counterclaims.  On January 22, 2007, the trial court signed a final order granting summary judgment to EMC and denied KB’s motion for partial summary judgment.  This appeal followed.

III.  Standard of Review
—
Summary Judgment

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.  
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004); 
see
 
Tex. R. Civ. P.
 166a(b), (c).  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  
IHS Cedars Treatment Ctr.
, 143 S.W.3d at 798. 

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties’ summary judgment evidence and determine all questions presented.
  Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005)
.  The reviewing court should render the judgment that the trial court should have rendered.  
Id
.

IV.  Who is an “Insured”?

In its third issue, KB asserts that the trial court erred by denying its motion for partial summary judgment regarding its assertion that each of the named parties in this appeal was an “insured” under the EMC policy.

The named insured on the Declaration Page
 of the policy is “Kaufman & Broad Lone Star, L.P. dba Kaufman & Broad of Dallas.”
(footnote: 2)  
Section II of the EMC policy contains the provisions pertinent to our discussion and reads in part as follows:

SECTION II - WHO IS AN INSURED

1. If you are designated 
in the Declarations 
as:

a.  An individual . . . 

b.  A partnership or joint venture . . . 

c.  A limited liability company . . .

d. An organization other than a partnership, joint venture or limited liability company you are an insured.  Your “executive officers” and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds but only with respect to their liability as stockholders. 

2. Each of the following is also an insured:

a. Your “employees,” other than either your “executive officers” (if you are an organization other than a partnership, joint venture or limited liability company) . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business . . . 

. . . .

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations. [Emphasis supplied.]

The KB entities have asserted that all of them were being sued in the underlying lawsuit by the homeowners for the actions of the named insured (a) in that the underlying plaintiffs’ allegations did not differentiate purported misconduct amongst the various defendants and (b) through the underlying plaintiffs’ allegations of alter ego, single business enterprise, and respondeat superior.
(footnote: 3)  Therefore, they argue that the EMC policy should cover all of the KB entities, not just the named insured.  They assert that this is a correct policy interpretation because (a) the policy does not prohibit insured status for unnamed persons or organizations for the conduct of a named insured and (b) because this concept is indirectly supported by caselaw.  

We recognize that application of the much-discussed “eight corners” rule requires that we give the allegations in the pleadings a liberal interpretation in favor of the insured.  
See Nat’l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.
, 939 S.W.2d 139, 141 (Tex. 1997).  However, a plain reading of the previously recounted policy provisions does not include non-named entities, such as the other defendants in this matter, as insureds.  It does include executive officers, employees, and stockholders under certain circumstances, but it specifically excludes persons and organizations that were past partnerships, joint ventures, or limited liability companies not shown to be named insureds.  The fact that one non-insured entity is purportedly sued for the actions of another insured entity does not magically metamorphose a non-insured into an insured.  This is a logic-challenged idea.

Alter ego and single business enterprise are separate and distinct theories.  
George Grubbs Enters., Inc. v. Bien
, 881 S.W.2d 843, 859 (Tex. App.—Fort Worth 1994), 
rev’d on other grounds
, 900 S.W.2d 337 (Tex. 1995).  Under the single business enterprise doctrine, when corporations integrate their resources to achieve a common business purpose, each corporation may be held liable for the debts incurred in pursuit of that business purpose.
  Old Republic Ins. Co. v. EX-IM Servs. Corp., 
920 S.W.2d 393, 395-96 (Tex. App.—Houston [1st Dist.] 1996, no writ). 
 
This doctrine is an equitable one applied to reflect partnership-type liability principles.  
N. Am. Van Lines, Inc. v. Emmons
, 50 S.W.3d 103, 110 (Tex. App.—Beaumont 2001, pet. denied).  Its purpose is to prevent an entity from relying on corporate form to evade an existing debt.  
See Old Republic Ins. Co., 
921 S.W.2d at 395.  Likewise, under the alter ego theory, courts will disregard the corporate entity when there is such a unity between a corporation and an individual that the corporation ceases to be separate and when holding only the corporation liable would promote injustice (the injustice being avoided is leaving the plaintiff with an uncollectible judgment against the corporation while the alter ego goes free).  
Mancorp, Inc. v. Culpepper
, 836 S.W.2d 844, 845 (Tex. App.—Houston [1st Dist.] 1992, no writ).  This doctrine has nothing to do with insurance coverage and has everything to do with businesses joining together to achieve a purpose and then seeking to avoid debts or judgments incurred in that purpose.  An insurance company assesses risks and issues a policy to a named insured and not to unnamed uninsureds over whom it has no control, including those who may join in an enterprise with the named insured or who may become indistinguishable from the named insured.  No cases hold to the contrary, and we decline to follow two cases which KB asserts yield a contrary result indirectly by implication.  In
 U.S. Fire Insurance Co. v. Deering Management Group, Inc.
, the xourt held that a parent company’s insurance policy did not cover an unnamed limited partnership owned by the parent’s subsidiary company because they were separate legal entities and there was no legal theory for taking exception to that rule. 
 
946 F. Supp. 1271, 1278 (N.D. Tex. 1996)
.  In 
CU Lloyd’s of Texas v. Hatfield
, 126 S.W.3d 679 (Tex. App.—Houston [14th Dist.] 2004, pet. denied), the court held that an unnamed sole proprietor was an insured under the sole proprietorship business’s policy which named the business as the insured.  To the extent these cases may be construed by indirect implication to be relevant to the issues before this court, we decline to adopt a reasoning that would afford coverage to a non-named insured who is alleged to have acted in concert with, or as, a named insured.  We hold that the insureds under the policy are Kaufman and Broad Loan Star, L.P. dba Kaufman & Broad of Dallas, also known as KB Home Lone Star, L.P.  KB’s third issue is overruled to the extent that other parties are asserted to be insureds under the EMC policy.

IV.  Duty to Defend

In its first issue, KB argues that the trial court erred by granting EMC’s motion for summary judgment and by denying its motion for partial summary judgment, finding that EMC had no duty to defend under its policy.  

We recently articulated the parameters of an examination of the duty to defend in 
Grimes Construction, Inc. v. Great American Lloyds
 
Insurance Co.
, 188 S.W.3d 805 (Tex. App.—Fort Worth 2006, pet. filed).  We stated the following:

The duty to defend is determined by the allegations in the underlying pleadings and the language of the insurance policy
.  Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.
, 939 S.W.2d 139, 141 (Tex. 1997).[
(footnote: 4)]  This standard is referred to as the “eight corners” rule.  
Id
.  When we apply the “eight corners” rule, we give the allegations in the pleadings a liberal interpretation in favor of the insured.  
Id
.  In other words, “in a case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured’s favor.”  
Id
.  (quoting 
Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.
, 387 S.W.2d 22, 26 (Tex. 1965)).  The facts alleged in the pleadings against the insured are presumed to be true when gauging the insurer’s duty to defend.  
Heyden Newport Chem. Corp.
, 387 S.W.2d at 24.  However, the court may not read facts into the pleadings, look outside the pleadings, or “imagine factual scenarios which might trigger coverage.”  
Merchants Fast Motor Lines
, 939 S.W.2d at 142. A liability policy obligates the insurer to defend the insured against any claim that could potentially be covered, regardless of the claim’s merits.  
Heyden Newport Chem. Corp.
, 387 S.W.2d at 26. A duty to defend any of the claims against an insured requires the insurer to defend the entire suit.  
CU Lloyd’s of Tex. v. Main Street Homes, Inc
., 79 S.W.3d 687, 692 (Tex. App.—Austin 2002, no pet.); 
Stumph v. Dallas Fire Ins. Co.
, 34 S.W.3d 722, 728 (Tex. App.—Austin 2000, no pet.); 
Pro-Tech Coatings, Inc. v. Union Standard Ins. Co.
, 897 S.W.2d 885, 892 (Tex. App.—Dallas 1995, no writ).

Grimes Constr., Inc
., 188 S.W.3d at 809-10.  Further,

An insurer’s duty to defend its insured is separate and distinct from its duty to indemnify.  
Calli Homes
, 236 F. Supp. 2d at 697.  The duty to indemnify is not based on the pleadings in the underlying lawsuit, but on the facts that establish liability.  
Id
. at 698;  
Mittlestadt
, 109 S.W.3d at 786-87.  It arises only after the insured has been adjudicated legally responsible for damages in a lawsuit by judgment or settlement.  
Collier v. Allstate County Mut. Ins. Co.
, 64 S.W.3d 54, 62 (Tex. App.—Fort Worth 2001, no pet.).  The duty to defend is thus broader than the duty to indemnify; if an insurer has no duty to defend, it has no duty to indemnify. 
 
Calli Homes
, 236 F. Supp. 2d at 698; 
Farmers Tex. County Mut. Ins. Co. v. Griffin
, 955 S.W.2d 81, 82 (Tex. 1997); 
Collier
, 64 S.W.3d at 59; 
Lay v. Aetna Ins. Co.
, 599 S.W.2d 684, 687 (Tex. Civ. App.—Austin 1980, writ ref’d n.r.e.). 

Id
. at 818.

Here, an examination of the plaintiff’s third amended petition includes summarized assertions that read as follows: 

(1) The Government disclosed to the prior purchaser that the Property had, in fact, been used as an artillery field.  In fact, the Government stated that such Property was subject to contamination by introduction of unexploded and dangerous bombs, shells, rockets, mines and charges either upon or below the surface thereof;

(2) KB had actual knowledge that the Property had been used as a practice range prior to and at the time that KB purchased and developed the Property;

(3) KB knew that the Property contained numerous unexploded bombs that were buried beneath the surface of the Property.  These unexploded bombs are dangerous and have the capability of inflicting bodily injury and death which is why the U.S. Government indicated that the Property be restricted to ‘above surface’ use only;

(4) KB knew that the U.S. Army Corp of Engineers had recommended that the unexploded ordnance be removed prior to the development of the area;

(5) KB intentionally withheld material information from the Homeowners that the homes they were purchasing were on top of a bombing site; 

(6) KB acted intentionally with malice in making their material misrepresentations and in fraudulently concealing the truth from the Homeowners; and

(7) KB constructed the homes in a negligent manner and was negligent in its supervision of its agents, employees, and sub-contractors in connection with the sale and construction of the homes.

Plaintiff’s fifth amended original petition also includes summarized assertions as follows:

(1) KB did not hire a contractor to remove the unexploded bombs, but instead constructed homes on top of the bombing range;

(2) During the marketing of the homes to the Plaintiffs, KB falsely represented that a recreational facility was planned adjacent to the homes;

(3) Defendants knowingly concealed information.  KB fraudly concealed the material facts by reason of Plaintiff’s reliance on KB’s fraudelent misrepresentation based on the fraudelent concealment of material facts;

(4) KB was negligent in failing to remove the unexploded bombs from the ground upon which they built and then sold Plaintiffs their homes.

As is often articulated in medical malpractice cases, it is axiomatic that artful pleading cannot change the character of a lawsuit.  In the vernacular, calling a duck a chicken does not make it so.
(footnote: 5)  The essence of the complaint made by the plaintiffs is that KB misrepresented and fraudulently concealed material facts surrounding the sales of its homes.  The purported facts that give rise to the alleged actionable conduct, not the legal theory, control in determining the duty to defend.  
Trinity Universal Co. v. Cowan
, 945 S.W.2d 819, 829 (Tex. 1997); 
Great Am. Lloyds Ins. Co. v. Mittlestadt
, 109 S.W.3d 784, 786-87 (Tex. App.—Fort Worth 2003, no pet.).  “The duty to defend must be determined here, as in other insurance cases, by comparing the complaint’s factual allegations to the policy’s actual language.” 
 Lamar Homes, Inc.
, 239 S.W.3d at 249.

Again, the gravamen of the homeowners’ lawsuits is that KB knew of the dangerous conditions existing on its property and intentionally misrepresented the property’s condition and built the homes anyway.  For there to be an “occurrence” under the policy, there must be an “accident,” which in this case, must have caused property damage, since no bodily injury is alleged.  KB points this court to 
Gehan Homes, Ltd. v. Employers of Mutual Casualty Co.
, 146 S.W.3d 833 (Tex. App.—Dallas 2004, no pet.), as instructive in this case.  We agree.  In 
Gehan
, the homebuilder was sued for, inter alia, negligently relying on a subcontractor’s general soil analysis and for negligently designing or constructing a slab that was inadequate for the existing soil conditions.  The court observed that two lines of cases regarding “occurrence” have evolved.  “The 
Maupin 
line of cases ‘pertains to coverage of claims against an insured for damage caused by its alleged intentional torts.’  
Federated Mut. Ins. Co. v. Grapevine Excavation
, 
Inc
., 197 F.3d 720, 723 (5th Cir. 1999).” 
 Id. 
 In 
Maupin
, the plaintiff’s allegation was that the insured acted intentionally, wrongfully, and willfully, and the court held that there was no occurrence because the conduct was alleged to be intentional.  
Id
.  “The second line of cases is derived from the Texas Supreme Court’s decision in 
Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.
, 416 S.W.2d 396 (Tex. 1967).”  
Id. 
at 839.  The 
Orkin
 case involved an allegation of negligence after a pesticide was applied to a rice mill and damaged the rice.  The court found that the policy term “accident” included negligent acts that caused damage that was undesigned and unexpected. 
 Id.
  Later cases have held that the terms “accident” and “occurrence” include damages that are unexpected, unforseen, or undesigned as a result of an insured’s negligent behavior.  
See, e.g., Great Am. Ins. Co. v. Calli Homes, Inc.
, 236 F. Supp. 2d 693, 699 (S.D. Tex. 2002).  Further, the Dallas Court of Appeals has observed the following:

There is not an accident when the action is intentionally taken and performed in such a manner that it is an intentional tort, regardless of whether the effect was unintended or unexpected.  However, there is an accident when the action is intentionally taken but is performed negligently and the effect is not what would have been intended or expected had the deliberate action been performed non-negligently.

Hallman
 
v. Allstate Ins. Co.
, 114 S.W.3d 656, 660-61 (Tex. App.—Dallas 2003) (citations omitted), 
rev’d on other grounds
, 159 S.W.3d 640 (Tex. 2005).  The 
Gehan
 court, taking all the foregoing into account, found that the allegations of negligence against the builder were “more than simply bare bones allegations.”  
Gehan, 
146 S.W.3d
 
at 842.  

[T]he intentional act of performing the contract was allegedly performed negligently.  The purported damage was an unexpected and undesigned consequence of Gehan’s alleged negligence.  We conclude, therefore, that the insurers did not establish as a matter of law that the Larsons’ petition does not allege an “occurrence” under the terms of the policy.  

Id. 
at 843 (citations omitted).

In our case, KB purports to fall under the 
Orkin
 case line, but it is readily apparent that under both the 
Orkin 
and 
Maupin
 lines of cases, KB’s actions do not constitute an “occurrence” as the term is defined in the policy.  The dissimilarities between this case and 
Gehan
 are instructive.  According to 
Gehan
, the builder did not take the additional step of having an additional soil analysis done, as opposed to possessing knowledge that the initial soil analysis was inadequate and proceeded anyway.  In contrast, here, KB allegedly possessed knowledge that the homes were being built on an abandoned artillery field and proceeded anyway.  
Gehan
 allegedly negligently designed a slab that was not sturdy enough for the soil.  KB intentionally built homes on soil that it allegedly knew contained bombs.  The scenario before this Court is wholly different from 
Gehan
 because the court there found that “the intentional act of performing the contract was allegedly performed negligently.” 
Id.
 The negligence allegations against KB are“simply bare bones allegations” and are in fact recast allegations of intentional conduct.  

Further, the exposure to fraudulent representations and promises and untrue statements are not an “occurrence.”  
State Farm Lloyds v. Kessler, 
932 S.W.2d 732, 738 (Tex. App.—Fort Worth 1996, writ denied) (citing 
Houston Petroleum Co. v. Highlands Ins. Co., 
830 S.W.2d 153 (Tex. App.—Houston [1st Dist.] 1990, writ denied)).  Likewise, negligent representations are not an “occurrence” under the policy.  
Grimes Constr., Inc.
, 188 S.W.3d at 816-17.   Acts that are voluntary and intentional generally do not cause an “accident,” even if the results are unexpected.  
Argonaut Sw. Ins. Co. v. Maupin
, 500 S.W.2d 633, 634-35 (Tex. 1973); 
Decorative Ctr. of Houston v. Employers Cas. Co.
, 833 S.W.2d 257, 259 (Tex. App.—Corpus Christi 1992, writ denied).  We recognize that, in general, while intentional acts do not cause “accidents,” as stated previously, intentional conduct does not 
automatically 
negate an “occurrence,” unless the harm from the intentional act was such a natural and foreseeable consequence that no accident, and hence, no occurrence, was present.  
Trinity Universal Ins. Co.
, 945 S.W.2d at 827-28.  This court has held that inadequate performance by subcontractors was a natural and foreseeable consequence of their negligent hiring and supervision, and hence, such negligent allegation was not a separate “occurrence.”  
See
 
Grimes Constr., Inc.
, 188 S.W.3d at 814-15.  Here, the resulting mental anguish and economic loss to the detriment of the homeowners are plainly a natural and foreseeable consequences of KB’s decision to build a subdivision on an abandoned artillery range.  There was therefore no “accident” and no “occurrence.”

KB also asserts that the homeowners incurred property damages through the loss of use of their property even though the property itself was not physically damaged.  As previously recounted, the definition of “property damage” includes “physical injury to tangible property, including all resulting use of that property” and “loss of use of tangible property that is not physically injured.”  It is worth noting that the plaintiffs’ underlying allegations of economic losses do not encompass, under Texas law, property damage.  
See Mittlestadt
, 109 S.W.3d at 788; 
Houston Petroleum Co.
, 830 S.W.2d at 153.
 Returning to the “loss of use” portion of the property damage definition, a loss of use is not what the plaintiffs’ pleading entails.  Specifically, the pleadings state that “Plaintiffs have suffered the mental anguish associated with Plaintiffs’ concerns for their safety and that of their minor children and their families, and their loss of enjoyment of life due to their inability to enjoy the peaceful and quiet possession of their homes.”  This does not equate to a loss of use of their property; it does equate to foreseeable mental anguish over their concerns about their property.  We hold that there was no “accident” and no “occurrence” under the policy and that no property damage was alleged to have been incurred.

We hold that the absence of an “occurrence,” and of property damage under the terms of the policy, result in no coverage by EMC under the policy issued to Kaufman and Broad Lone Star, L.P. 

VI.  Other Claims

The extracontractual claims of violations of the DTPA and Texas Insurance Code require a coverage finding.  Because no coverage exists, summary judgment was proper as to these claims.  
See Emmert v. Progressive County Mut. Ins. Co.
, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied)
; 
Bartlett v. Am. Republic Ins. Co.
, 845 S.W.2d 342, 348-49 (Tex. App.—Dallas 1992, no writ); 
Koral Indus., Inc. v. Security-Connecticut Life Ins. Co.
, 788 S.W.2d 136, 147 (Tex. App.—Dallas 1990, no writ).  The same is true of the alleged section 542.051 insurance code violation (prompt payment of claims).  
See Progressive County Mut. Ins. Co. v. Boyd
, 177 S.W.3d 919, 922 (Tex. 2005); 
Mid-Century Ins. Co. of Tex. v. Barclay
, 880 S.W.2d 807, 811 (Tex. App.—Austin 1994, writ denied).  KB’s first issue is overruled.

VII.  Texas Insurance Code Article 21.55

In its second issue, KB asserts error on the part of the trial court in denying its motion for partial summary judgment regarding EMC’s alleged violation of article 21.55 of the Texas Insurance Code, concerning insurers’ penalties for failure to promptly pay claims.  The KB parties “acknowledge that this court held to the contrary in 
Ulico Cas. Co. v. Allied Pilots Ass’n
, 187 S.W.3d 91 (Tex. App.—Fort Worth 2005, pet. granted) (following 
TIG Ins. Co. v. Dallas Basketball, Ltd.
, 129 S.W.3d 232 (Tex. App.—Dallas 2004, pet. denied)).”  As such, KB’s second issue is overruled.

VIII.  Conclusion

Having overruled KB’s issues, we affirm the judgment of the trial court.

BOB MCCOY

JUSTICE

PANEL B: LIVINGSTON, WALKER, and MCCOY, JJ.

DELIVERED: January 31, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
KB’s pleadings assert that Kaufman & Broad Lone Star, L.P. is also known as KB Home Lone Star, L.P.

3:
KB’s arbitration pleading reads,

Alter Ego/Single Business Enterprise/Respondeat Superior

36. Plaintiffs, pleading in the alternative, would show that KB Home Lone Star, L.P., and/or Kaufman & Broad of Texas, Ltd. is the alter ego of KB Home f/k/a Kaufman & Broad Home Corporation.

37. Plaintiffs also plead a single business enterprise theory of recovery against all Defendants save and except Tom Bannon.

38. Tom Bannon was acting as the agent for KB Home and as such, KB Home is responsible on the theory of respondeat superior.

4:
This has most recently been articulated by our supreme court in 
Lamar
.  “The duty to defend must be determined here, as in other insurance cases, by comparing the complaint’s factual allegations to the policy’s actual language.”  
Lamar Homes, Inc. v. Mid-Continent Cas. Co.
, 239 S.W.3d 236, 249 (Tex. 2007).

5:
“That which looks like a duck, walks like a duck, and quacks like a duck, will be treated as a duck even though some would insist upon calling it a chicken.”  
Tidelands Marine Serv. v. Patterson
, 719 F.2d 126, 128 n.3 (5th
 Cir. 1983).